AGAPE of Central Alabama, Inc. filed a petition for permanent custody of Conrad Dillon Vinson on November 12, 1981. The child, born October 26, 1981, was only two and one-half weeks old at that time. Counsel for the child's mother, Karen Elaine Vinson, was appointed November 13, 1981, as was a guardian ad litem for the child. A hearing on the merits of the petition was held on February 17, 1982. The evidence revealed the following:
Karen is twenty-five years old, and has experienced four pregnancies. The first two pregnancies ended in abortion; the third resulted in a son, Todd, who has been legally adopted by his maternal grandparents; and the fourth pregnancy resulted in a son, Conrad, the subject of this litigation. The identity of the father does not appear. Karen has been on drugs, including marijuana, alcohol and angel dust, and was sexually promiscuous. She is unable to provide for herself and has no job skills.
During her pregnancy with Conrad, Karen was referred to AGAPE, an adoption-related agency, by a church group and, apparently, by her mother. Mrs. Plunkett, an AGAPE social worker, initially visited Karen in Dothan in July 1981. Karen was approximately six months pregnant at that time. AGAPE secured foster home care for her at a private home in Letohatchee. She stayed there briefly — about a month and a half — and was then placed in a foster home in Millbrook until the child's birth. Subsequent to her release from the hospital, Karen resided briefly with her parents. On November 29, 1981, she returned to the Montgomery area to live in the Elks Memorial Center and enroll in the Vocational Rehabilitation Service's program. AGAPE was apparently instrumental in her acceptance both at the Center and in the rehabilitation program.
Mr. Pugh, director of AGAPE, testified, in part, that he had made little progress with Karen since AGAPE began working with her. He said that her behavior was agitated and she lacked the emotional stability to care for a child. Additionally, he stated that she has no financial resources, her plans were unrealistic, and that she quickly changed from one line of thought to another. Mrs. Plunkett, the AGAPE social worker, testified, in part, that Karen changed her mind often about placing the baby for adoption. Mrs. Vinson, appellant's mother, stated that her daughter was not capable of taking care of Conrad and that there are times when Karen can't "think straight." She said that Karen became physically violent toward her while she was driving her home from Montgomery. The episode continued at home until Karen voluntarily called the police to come and get her. Mrs. Vinson testified that she could not take this child, as she did the first, and that Karen could not return to her home until her attitude and conduct improves. Miss Fitzgerald, a state vocational rehabilitation counselor, stated that Karen has made little progress in the state program. She said Karen is in "extended evaluation to determine her vocational potential." Mrs. Hogan, with whom Karen lived prior to Conrad's birth, testified that her behavior was unpredictable.
Karen testified that she was under pressure by her parents and AGAPE to allow her child to be placed for adoption. She also said she was unsure about adoption. She admitted to former drug and alcohol use and that she did not act responsibly toward Todd, her first child. She said it was wrong for her mother to have taken her first child. She wants to get married and to work, but has no chosen vocation. She feels it would be in her child's best interest to be with her.
At the conclusion of AGAPE's case, Karen's counsel moved for directed verdict on the basis that AGAPE failed to prove its case. The motion was denied. On February 18, 1982, the trial court terminated Karen's parental rights and awarded permanent custody of the child to AGAPE for permanent placement. A motion for reconsideration was denied. She appeals.
The issues raised in this appeal are: (1) whether the trial court erred in denying appellant's motion for directed verdict; and *Page 1077 
(2) whether the trial court's decision was contrary to the law and evidence presented at the hearing.
Where a case is tried without a jury, the proper procedure upon the ground of insufficient evidence is a motion for dismissal or for judgment, not a motion for directed verdict.See Quick v. Director of State of Alabama Department ofIndustrial Relations, 398 So.2d 312 (Ala.Civ.App. 1981).
A natural parent has a prima facie right to custody of his or her child. In re Palmer, 387 So.2d 215 (Ala.Civ.App. 1980). This right is protected by due process standards of the Constitution. Pendergrass v. Watkins, 383 So.2d 851
(Ala.Civ.App. 1980). Parental rights, however, are not absolutely controlling and must bow to the paramount principle in custody suits — the best interests of the child. In rePalmer, supra; Wambles v. Coppage, 333 So.2d 829 (Ala.Civ.App. 1976). It is presumed that the child's best interest will be served by placing it in the custody of the natural parents. Elyv. Casteel, 341 So.2d 730 (Ala.Civ.App. 1977). To remove a child from parental custody, it must be shown by clear and convincing evidence that to remain with the parent would be contrary to the child's best interest. Ely, supra at 734.
We are of the opinion that AGAPE met this burden. Clearly, the best interests of the child do not rest with its mother. She is shown to be incapable of supporting herself, much less providing for the care, protection and control of an infant. She is shown to have no place to rear the child, no skills to hold a job and no particular aim in her plans for the future.
Termination of parental rights is, indeed, a drastic step. However, where there is legal evidence to support a trial court's decree, we may not substitute our judgment for that of the trial court. This case was heard ore tenus and is not plainly wrong. We feel the trial court correctly denied the motion to dismiss, and that its final decision was not contrary to the law or evidence.
This cause is due to be affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.