This appeal is from an order of the Circuit Court of Calhoun County placing permanent custody of two children in the State Department of Pensions and Security (DPS) and terminating the parental rights of the father. The natural mother of the children is deceased. The father appeals.
On December 11, 1981 DPS filed petitions in the Family Court Division of the Calhoun County Circuit Court seeking permanent custody of Donnie Wayne Gaddy and Michael Gaddy, two of Alvin Gaddy's children. Counsel for the children's father was appointed, as was a guardian ad litem for the children. A hearing on these petitions was held on February 22, 1982. After the ore tenus hearing, the trial court took the matter under advisement and continued the action pending receipt of a home study of Alvin Gaddy's Florida residence. This report was received on June 9, 1982. On August 9, 1982 the court granted custody of the children to DPS and permanently terminated the father's parental rights. The father filed a motion for new trial. On September 17, 1982 the court continued generally the father's motion for new trial. On the same day Alvin Gaddy filed a notice of appeal.
The issue before this court is the sufficiency of the evidence to support the trial court's decree.
Alvin Gaddy testified at trial that he is currently a resident of Lake Monroe, Florida and is employed by a construction company as a roofer. He is married. Gaddy, his wife and his wife's three children live in a nine room house in a rural area.
Alvin Gaddy had a drinking problem but testified that he has recently stopped drinking. In 1980 he was arrested for driving while intoxicated. While in jail on this charge, Gaddy executed a boarding home agreement giving DPS custody of the children. He later decided to revoke this boarding home agreement. Gaddy was also incarcerated for twenty-two days in 1981 for assault with an automobile. When he was released from jail, Gaddy left his children with DPS while he searched for work in Florida.
Since 1979 Alvin Gaddy has resided in four states. His family has received public assistance due to his failure to maintain employment.
Glenda Elston, a social worker for DPS, testified that her first contact with Donnie Wayne Gaddy and Michael Gaddy was in January 1979 concerning a burn one of the children had received. Since that initial report she worked with the Gaddys several times. She received reports that the children were ill and the utilities were off. She arranged for payment and restoration of service. She also received a report that the children were not attending school and were not being properly supervised. Another social worker for DPS testified that he received reports that the children were not going to school.
Charlotte Marbut, also a DPS social worker, testified that in her opinion the children were adoptable. She stated that the Florida Department of Social and Rehabilitative Services, at the request of DPS, conducted an evaluation of Alvin Gaddy's Florida residence. In December 1981 the Florida agency disapproved Gaddy's residence for placement of the children. According to this initial report, this recommendation was made on the basis of the Gaddy family income and the length of Gaddy's marriage to his present wife. Gaddy's wife is unemployed and neither Gaddy nor his wife has medical insurance for her children. Charlotte Marbut stated that the Florida Department of Social and Rehabilitative Services' disapproval of Gaddy's home meant that the state of Florida would not accept the children. DPS would not place the children with Mr. and Mrs. Gaddy without approval of the placement by the state of Florida.
Mrs. Sharpton, Alvin Gaddy's sister, testified that the two children had resided in her house on numerous occasions. She expressed an interest in having the children live with her. She stated that she was able to care for them. Mrs. Sharpton and her two children live with her sister and her *Page 93 
sister's child in a two bedroom house. Mrs. Sharpton's only means of support was the Aid to Dependent Children Assistance Program.
Apparently from the record, the children have spent a good deal of time in foster care and on several occasions have been left in the care of relatives by their father. DPS received temporary custody of the children several times. All three of the social workers recommended that Gaddy's parental rights be terminated. One such witness stated that the children needed a sense of permanency. Their father has been unable to provide this. Michael, the nine year old child, has shown marked improvement in his school work since being in the care of someone other than his father. At the beginning of the 1981-82 school year Michael was performing below kindergarten level but advanced to first grade level in several areas and early second grade level in other areas during the course of the school year. He is scheduled for therapy later on in the year.
The court's judgment after an ore tenus hearing will be presumed correct and will not be disturbed unless palpably wrong. The ultimate consideration in a child custody case is the child's welfare. Phillips v. Alabama Department of Pensions Security, 394 So.2d 51 (Ala.Civ.App. 1981). We note that the natural parent has a prima facie right to custody of his child.Vinson v. Agape of Central Alabama, Inc., 416 So.2d 1075
(Ala.Civ.App. 1982). However, the parent's custodial rights are not controlling where such custody is not in the child's best interests. There is a presumption that the child's best interests will be served by placing the child in the custody of the natural parent. Ely v. Casteel, 341 So.2d 730 (Ala.Civ.App. 1977).
To remove a child from the custody of the natural parent, the evidence must be clear and convincing that it would be against the best interests of the child to remain with the natural parent. Ely v. Casteel, supra. "[T]ermination of parental rights by the State should occur only upon strong proof of abuse and/or continuing neglect of the welfare of the child."Glover v. Alabama Department of Pensions Security,401 So.2d 786 (Ala.Civ.App. 1981).
Although the record contains no evidence of physical abuse, there is evidence of neglect. Gaddy states in brief that the testimony presented related to events and conditions that existed in his home environment and living conditions from January 1979 through August 1981. The father testified at trial that his family environment and living conditions have changed dramatically since August 1981. Yet he made no effort to visit with or offer support of these two children from October 1981 through February 1982.
In Hamilton v. State, 410 So.2d 64 (Ala.Civ.App. 1982), we stated that "without evidence as to the parent's present ability to care for them and existing conditions of her home and life style, there can be no `clear and convincing' evidence that the children's best interests would be served by terminating the parent's parental rights." Gaddy relies on this case and argues that without evidence as to his existing home conditions and life-style there can be no clear and convincing evidence that the children's best interests would be served by terminating his parental rights.
The Florida Department of Health and Rehabilitative Services, at the request of the trial court, conducted another home evaluation. This evaluation report, dated May 24, 1982, was submitted to the court before the order to terminate parental rights was rendered.
In their report the Florida agency once again recommended that the children not be placed in the Gaddy residence. The agency expressed concern about the financial and emotional stability of the family. Florence Gaddy, Alvin's wife, received Aid to Dependent Children from December 1981 to May 1982. Gaddy was, at the time of the report, working full time for $3.40 per hour. Since the first home evaluation report was submitted to DPS, one of Alvin's children not involved in this case moved into the Florida residence and Gaddy's wife was *Page 94 
pregnant. These additions to the family unit caused the agency to continue its concern for the Gaddy's marginal financial situation. The evaluator recommended psychological examination for Mr. Gaddy. This report is evidence of Gaddy's present living conditions.
Gaddy also avers that DPS made little effort to rehabilitate or assist him in corrective measures to enable him to again exercise his parental rights. He cites Miller v. AlabamaDepartment of Pensions Security, 374 So.2d 1370 (Ala.Civ.App. 1979), for the proposition that measure less drastic than permanent termination of parental rights should be attempted. He argues that DPS failed to try any less drastic alternatives.
Testimony was presented that attempts to place the children with relatives failed. Either the relative was unable to take the children or DPS determined that the relative was unable to take on this responsibility. Efforts were made by DPS to correct problems Gaddy was having raising three children. However, these efforts were fruitless. DPS received several reports about the children's school attendance and with each such report DPS discussed the problem with Gaddy. Gaddy did not correct the problems.
We also note that DPS is unable to place the children in the Gaddy home without the approval of the state of Florida. Florida, on the basis of the home evaluations, will not approve the placement. In view of this evidence and the other evidence, we hold that the trial court did not abuse its discretion. This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.