BRADLEY, Judge.
The natural parents appeal from a ruling of the Circuit Court of Baldwin County terminating their parental rights and granting permanent custody of their two minor daughters to the Baldwin County Department of Pensions and Security.
They argue that the trial court abused its discretion in terminating their parental rights and placing custody of the children with DPS. We find no error and affirm.
The relevant facts are as follows. Appellants, Jan and Carol Petersen, are the natural parents of Victoria Nicole Petersen, born August 25, 1979, and Susan Marie Petersen, born May 16, 1981. On February 7, 1982 Susan Marie, who was at that time *993 eight months old, was admitted to a hospital in Pensacola, Florida for a large burn over her lower back and buttocks area, a skull fracture, broken ribs, internal injuries, numerous bruises and abrasions, and human bite marks on her arms and legs. There was a strong suspicion of child abuse, and on February 12, 1982 both Susan Marie and Victoria were placed in the temporary custody of the Baldwin County, Alabama, Department of Pensions and Security.
When questioned about the child’s injuries, the parents related that the child had been staying with a nineteen year old male babysitter named Vincent Hamilton for two weeks while they were in Florida. Hamilton was the son of husband’s mother’s boyfriend and had been living with the Peter-sens for six months in Lillian, Alabama. There was evidence that Carol, the mother, was admitted to a Pensacola hospital on January 15, 1982 for a drug overdose and for having been beaten by Jan, her husband, and that she was recuperating at a friend’s house in Pensacola. Jan was staying there along with the couple’s oldest daughter, Victoria. Apparently Jan made trips from Pensacola to Lillian, Alabama to visit with Hamilton and Susan Marie every day or every other day while he stayed in Pensacola during his wife’s illness and recovery. Carol visited with the child on three occasions: January 22, January 26, and February 5. She stated that when she saw Susan Marie on February 5 she did not notice the burn and had noticed the bumps and bruises on the child’s body, but that Hamilton had explained them to her satisfaction.
Hamilton testified that he was cooking dinner and the child tipped a pot of boiling water he had placed on the table onto herself. However, a doctor who examined the child testified that the burn was between twenty-four and twenty-seven hours old and that the burned area was “well circumscribed” and was consistent with an immersion-type burn, as if someone had lifted and placed the infant in a hot liquid.
Hamilton also explained the abrasions on the child’s forehead, and the bruises on the child’s chin, neck, chest, and arms, as due to being knocked over and scratched by a large dog and being crushed on a bed by her parents who were fighting. He explained the marks on the child’s arm resulted from falling on a teacup in her playpen.
The doctor who examined the child testified that the child’s broken ribs were caused by blunt force trauma and not from a fall, that the abrasions were at least twenty-four hours old, that the bruises were between five and fourteen days old and were of different colors and stages of healing. There was expert testimony that these injuries were consistent with child abuse and could not have been accidental.
There was evidence that Jan Petersen picked Hamilton and Susan Marie up on February 7 to take them back to Pensacola for Sunday dinner. Father denies having noticed the child’s injuries when he picked her up; however, there was evidence that Hamilton showed him the burn and explained to him what had happened. In any event, on the way back to Pensacola, father drove past a hospital, but did not seek medical attention for the child. When he arrived in Pensacola, he told mother about the burn and although she asked what had happened there was evidence that she did not look at the burn until a half hour later. Moreover, it was not until two hours later that she took Susan Marie to the hospital for treatment. Instead of going to the hospital with mother, father went to a wrestling match with Hamilton and a son from a previous marriage.
As indicated above, the parents’ eldest daughter, Victoria, was removed from their custody also. It was adduced at trial that she had given her foster mother a “graphic description” of having been sexually abused by Hamilton. A caseworker testified that a four year old would be completely unfamiliar with such an event unless it had actually happened to her. Hamilton was subsequently indicted by the grand jury of Baldwin County for child abuse.
*994 Mother testified that she had no reason to suspect that Hamilton would ever harm the children.
The record shows that mother is expecting another child, that her marriage to Jan has been less than stable, that she has had severe emotional problems, and that both she and Jan have been found guilty of violating various criminal laws. In 1978 mother was convicted of obtaining drugs through a false prescription and was placed on probation for carrying a concealed weapon. In 1983 she was placed on a new probation for assault, trespass of a dwelling, and criminal mischief. Father has been charged with assault with intent to murder and given four years’ probation. Moreover, at the time Custody was taken from parents, father had been unemployed for nearly three years.
The record shows that a caseworker was working with and counselling parents following DPS’s involvement in the case, but that counselling was terminated because of the caseworker’s fear of father and the couple’s uncooperativeness. The Petersens did not follow through with parental coun-selling and training set up for them by DPS.
This court has held that where there is a dispute over custody of a child between a natural parent and one who is not a natural parent the natural parent is presumed to be the best custodian for the child. Ely v. Casteel, 341 So.2d 730 (Ala.Civ.App.1977); Borsdorf v. Mills, 49 Ala.App. 658, 275 So.2d 338 (Ala.Civ.App.1973). Before a trial court can remove custody from the natural parent, there must be clear and convincing evidence before the court that it would not be in the child’s best interests to remain with the natural parent. Vinson v. AGAPE of Central Alabama, Inc., 416 So.2d 1075 (Ala.Civ.App.1982); Massey v. Massey, 410 So.2d 422 (Ala.Civ. App.1981). And, the termination of parental rights should occur only upon strong proof of abuse and/or continuing neglect of the welfare of the child. Gaddy v. Alabama Department of Pensions & Security, 428 So.2d 91 (Ala.Civ.App.1983); Glover v. Alabama Department of Pensions & Security, 401 So.2d 786 (Ala.Civ.App. 1981).
In the instant case the trial court determined that the children’s best interests would be served by placing their permanent custody in DPS and terminated the natural parents’ rights, Where the trial court hears the evidence ore tenus, its judgment is given every favorable presumption and will not be disturbed unless it is palpably wrong. Hudgins v. State, 418 So.2d 913 (Ala.Civ.App.1982).
The parents claim there was not clear and convincing evidence that they were responsible for their child’s injuries. We disagree.
The record shows that they left the child in the care of a nonrelated male teenager for a two-week period instead of with relatives who lived nearby, that they visited with the child frequently but never noticed any abuse, that when they finally discovered the child’s injuries they believed the babysitter’s version of how the injuries occurred, and that after noticing the child’s injuries they waited more than two hours before seeking treatment for the child. What is more, parents are still friends with Hamilton, and father was so unconcerned about his daughter’s injuries that he went to a wrestling match with Hamilton when the child was taken to the hospital. Moreover, the record shows that the Petersens have a history of violence and have had marital, emotional, and financial problems.
After reviewing the evidence before us, we find that the record is replete with evidence of parental neglect. Both children have been abused; one physically and one sexually. Although it appears that the abuse was inflicted by a third party, appellants were custodians of the children and were responsible for their children’s welfare. There is ample evidence that they grossly neglected their parental duties and were either unable to prevent the abuse or were indifferent to the infliction of that abuse. Therefore, the trial court was correct in terminating the parents’ rights to *995 custody of their children and placing custody with DPS for permanent placement.,
AFFIRMED
WRIGHT, P.J., and HOLMES, J., concur.