This is an appeal from an order of the Juvenile Court of Calhoun County denying the motion of the paternal grandmother for temporary or permanent custody of her grandson, Kenneth Wix. The grandmother presents two issues for our review: (1) was the trial court's order not supported by the evidence and therefore reversible error; (2) did the trial court abuse its discretion and deny the grandmother her constitutional rights in turning down the grandmother's request for an extended visit by Kenneth in her Tennessee home so that she could be further evaluated. Answering both questions in the negative, we affirm.
The trial court heard the evidence presented ore tenus, and its decree is therefore given a presumption of correctness such that it will not be disturbed unless palpably wrong. Fitzgeraldv. Jeter, *Page 119 428 So.2d 84 (Ala.Civ.App. 1983). In all child custody matters the controlling consideration is the best interests of the child.Johnson v. Sparks, 437 So.2d 1308 (Ala.Civ.App. 1983). The award of custody of a dependent child is within the sound discretion of the trial court. Nesmith v. Nesmith,419 So.2d 247 (Ala.Civ.App. 1982). In exercising its discretion in the child's best interests:
 "[The] trial court considers numerous factors including the sex and age of the child, the child's emotional, social, moral, material, and educational needs, the parties' age, character, stability, health, and home environments, the interpersonal relationship between the child and the parties, the effect on the child of a disruption of the custody arrangement, and the parties' success in raising other children."
Johnson v. Sparks, supra, citing Ex parte Devine, 398 So.2d 686
(Ala. 1981) (emphasis added). The evidence tends to support the order of the trial court.
Kenneth Wix, then about two years old, was taken by his father, James Carl Wix, a truck driver, on a trucking run to Florida. Also on the trip was Wix's girlfriend, Tina Marie Williams, a/k/a Sherry Garrison, whom Wix had known only a short time. While in Florida Wix's truck was confiscated by the authorities. Wix called the grandmother, asking for money so he and his son could return home; the local Travelers Aid also called the grandmother, requesting money on behalf of Wix and Kenneth. She refused both requests. As they began hitchhiking back, Wix and Tina Marie split up, with Tina Marie taking Kenneth. They were to meet in Tennessee. Wix soon arrived at his mother's home. Tina Marie never made it to Tennessee with Kenneth. Tina Marie had begun hitchhiking and had abandoned Kenneth in Alabama before going off with another truck driver. Kenneth was turned over to the Calhoun County Department of Pensions and Security (DPS) as an anonymous child. The FBI began an extensive search to determine Kenneth's parents. It found no missing person's report on him in any of the contiguous states. The FBI continued its search from May 1983 to August 1983 when they found Tina Marie, who led them to Carl Wix. By then the Calhoun County Juvenile Court had adjudicated Kenneth as a dependent and had given temporary custody to DPS.
The grandmother officially sought custody of Kenneth as early as September 28, 1983. On January 4, 1984 the grandmother made a motion for extended visitation by Kenneth in her Tennessee home for "an evaulation . . . of the Grandparent and child interaction and behavior observations."
The Tennessee Department of Human Services recommended that the grandmother be given custody of Kenneth. However, after an extensive case study, the Alabama DPS recommended that Kenneth not be placed with the grandmother. After a hearing the trial court ordered that DPS retain temporary custody of Kenneth.
The grandmother is now in her mid-fifties. She was married twice, divorced twice, and had five children, all of the first marriage. She had little success in rearing her own children. Of her five children, she has an on-going relationship with only one. She has not seen one daughter for more than ten years. She has up to eleven grandchildren and is unsure of the correct number since she has such a strained relationship with her children. Of the eleven grandchildren, only two are currently residing with a natural parent; two have been murdered; one was placed for adoption by the state of Nevada; one was adopted by a maternal aunt and uncle; one was placed in the custody of its paternal grandmother; and two or three are unknown to their grandmother.
The grandmother has a relationship with one daughter, but that relationship is strained because the daughter is separated from her husband and has been cohabitating with another man for seven years. She and her paramour have a history of physical confrontations, and he once knocked out one of her front teeth. The state of Tennessee *Page 120 
took one of the daughter's two children away from her. Tennessee keeps an open file on this daughter because of complaints it received concerning the daughter remaining in her custody. A health nurse was assigned to help with the child. Notwithstanding this daughter's lifestyle and problems encountered in attempting to raise her own children, the grandmother testified that should Kenneth be placed with her she would need this daughter's assistance in keeping him.
The daughter whom the grandmother has not seen for ten years has possibly five children, two of whom were murdered by their father. The grandmother once attempted to adopt one of this daughter's children but the daughter removed the child from her without her consent. The child was later found murdered in California. The daughter spent a year in prison for withholding evidence on the death of the first child.
The case file on Kenneth from the Texas Department of Human Resources indicates that Kenneth's father, Carl, abused and neglected him when they lived in Texas from 1980 to 1982. Carl once left Kenneth with a sitter for three days. The sitter turned Kenneth over to the local police. On one occasion Carl took the grandmother's vehicle and she obtained a warrant for his arrest. Thus, there is evidence in the record that supports the trial court's finding that Carl Wix poses a threat to Kenneth's well-being and that the grandmother would be unable to prevent an abduction of Kenneth by his father.
The trial court did not abuse its discretion in determining that Kenneth should remain with DPS and that it would not be in his best interests for his custody to be placed with the grandmother.
The grandmother next contends that the trial court violated her constitutional rights by not granting her motion for an extended visit with Kenneth so that she could be evaluated. We disagree. First, constitutional issues raised for the first time on appeal are not considered by this court. Harp v. Harp,462 So.2d 372 (Ala.Civ.App. 1984); Burton v. Burton,379 So.2d 617 (Ala.Civ.App. 1980). Second, we are unable to find a ruling on the motion by the trial court in the record, and only rulings by a trial court can be reviewed by an appellate court.Parker v. Parker, 392 So.2d 229 (Ala.Civ.App. 1980). In the absence of a ruling, the trial court cannot be placed in error.
Finding no reversible error, we affirm the trial court's judgment.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.