This is a termination of parental rights case.
The Alabama Department of Pensions and Security (DPS) brought three separate petitions, seeking permanent custody of each of the mother's three minor daughters and the termination of all parental rights. After a trial in which the evidence was presented to the trial court ore tenus, the trial court entered three orders granting DPS custody of each child and terminating all parental rights in and to the three children. *Page 534 
From each of the three orders, the mother appeals to this court. We note that there are two fathers, both of whom refused service of the DPS petitions in this case. Neither appears to have contributed to the support of the children in the last three to four years. The father of the younger two children, who was also the husband of the mother, was incarcerated in a Michigan prison at the time of the trial. In short, neither father sought to prevent the termination of his parental rights, and we are concerned here only with the mother's parental rights. We affirm the decision of the trial court terminating those rights.
The overriding consideration in child custody cases is the best interest of the child. Wix v. State, Department ofPensions and Security, 464 So.2d 118 (Ala.Civ.App. 1985);Phillips v. Alabama Department of Pensions and Security,394 So.2d 51 (Ala.Civ.App. 1981). Although parents have a prima facie right to the custody of their child, this court has held that such right must always yield to the best interests of the child if it is shown that parental custody is contrary to those interests. In the Matter of Moore, 470 So.2d 1269 (Ala.Civ.App. 1985); Gaddy v. Alabama Department of Pensions and Security,428 So.2d 91 (Ala.Civ.App. 1983); Fitzgerald v. Jeter,428 So.2d 84 (Ala.Civ.App. 1983); Vinson v. AGAPE of CentralAlabama, Inc., 416 So.2d 1075 (Ala.Civ.App. 1982); Phillips, 394 So.2d at 53. For the trial court to terminate parental rights, however, the evidence must be clear and convincing that the child's best interests are served by permanent removal from the custody of the parent or parents. In the Matter of Clingan,471 So.2d 435 (Ala.Civ.App. 1985); In the Matter of Moore,470 So.2d 1269; Gaddy, 428 So.2d at 93; Vinson, 416 So.2d at 1077.
The sole issue raised by the mother on appeal is whether there was clear and convincing evidence to support the orders terminating her parental rights. She argues that such clear and convincing evidence was lacking and that the trial court thus erred in terminating her parental rights.
In child custody cases where the evidence was presented to the trial court ore tenus, that court's decision is presumed to be correct and will not be set aside on appeal, unless it is shown to be plainly and palpably wrong. In the Matter of Moore,470 So.2d 1269; Wix, 464 So.2d at 118; Gaddy, 428 So.2d 93;Fitzgerald, 428 So.2d at 85; Phillips, 394 So.2d at 53. Applying this standard of review in the present case, we conclude that the decision of the trial court was not plainly or palpably wrong because it is supported by clear and convincing evidence that the best interests of the children would be served by removing them from the mother's custody.
The starting point in our decision to affirm the trial court is the 1984 Child Protection Act, effective May 8, 1984 and codified at §§ 26-18-1 to -10, Code of Alabama 1975, which gives the juvenile courts of this state authority to terminate parental rights in appropriate cases. Under this act, proceedings to terminate parental rights are to be conducted much as they had been prior to the passage of the act in accordance with juvenile court procedures provided by §§ 12-15-50 to -76, Code 1975. See § 26-18-4, Code of Alabama 1975.
Under § 26-18-7 (a) a juvenile court may terminate parental rights if it finds from clear and convincing evidence that the parents are unwilling or unable to discharge their responsibilities to and for their child. The statute lists several factors which the court may consider, but to which it is not limited, in determining whether parental rights may be terminated. These factors include emotional or mental illness or excessive use of alcohol or drugs which render the parent unable to care for the needs of the child. § 26-18-7 (a)(2), Code of Alabama 1975.
The Child Protection Act enumerates only some of the many factors this court has long taken into consideration in making determinations concerning the termination of parental rights. Among the factors we have emphasized are the conduct of the *Page 535 
parents toward the child, the parent's love or interest in the child, activities of the parents that could be detrimental to the safety and welfare of the child, and whether there are less drastic alternatives available than the permanent removal of parental custody. Miller v. Alabama Department of Pensions andSecurity, 374 So.2d 1370 (Ala.Civ.App. 1979). See Glover v.Alabama Department of Pensions and Security, 401 So.2d 786
(Ala.Civ.App. 1981).
In this case the evidence of neglect over the years was clear and convincing and showed an inability or an unwillingness on the part of the mother to properly care for her children. Prior to moving to the State of Alabama in approximately January 1981, the family resided in Michigan. There they were under the supervision of the Michigan Department of Social Services, due to the alleged neglect or abuse of the oldest daughter, who had been severely burned. When the family moved to Alabama, DPS picked up the children and placed them in foster homes at the request of the Michigan Department of Social Services. The mother and her husband had not informed the department of their departure from Michigan.
The children were returned to the mother's custody in September 1981. They were removed again in July 1982, when a DPS investigation, prompted by an anonymous phone call concerning the eldest child's involvement with alcohol, revealed that the mother and children were living in uninhabitable and squalid conditions. The mother and her husband had apparently separated sometime prior to July 1982, and the mother and the three daughters were living with her sister and the sister's children. There was ample evidence at the trial that demonstrated extreme neglect of the children, two of whom had scars on them from apparent cigarette burns, suggesting possible abuse, as well as neglect.
The mother admitted at the trial that her home in July 1982 "was not suitable for the kids." Her position was that at the date of the trial, October 25, 1984, she had changed. She told the court that she was trying to correct her life and asked it to "observe her situation for a while." Despite these claims, there was little indication that she had made much attempt at rehabilitating herself.
The evidence was clear and convincing that at the time of the trial the mother was not presently able to support and rear her daughters. Though she claimed she was only "laid-off" from her job, the evidence at the trial was that she was then unemployed and unable to support her children. She had in fact worked only a couple of weeks since her children had been removed from her custody in July 1982. Moreover, she had failed to apply or reapply for public assistance for which she was eligible.
The evidence further showed that, since the children had been removed from her custody in July 1982, she had never managed to establish a stable home, moving from place to place and failing to inform DPS of her whereabouts. A couple of months prior to the trial she and her boyfriend had rented a house. The mother claimed they were improving it and that this house would provide an adequate home for her daughters. Though the house itself may have been clean and habitable, the boyfriend with whom the mother wished her daughters to live had been convicted of sexually molesting an eight-year-old retarded girl. The mother claimed that the boyfriend was not guilty of the crime, though he had pleaded guilty, and she testified that she believed he was fit to raise the children. The mother admitted that both she and the boyfriend had drinking problems and were attending meetings of Alcoholics Anonymous. Unquestionably, the environment into which the court would be releasing the children was a factor to be considered. In the Matter ofClingan, 471 So.2d 435; Wix, 464 So.2d at 120.
We find it significant that the children, of the ages of twelve, six and two years, have been in foster homes since they were removed from their mother's custody in July 1982. Testimony revealed that since that date the mother had visited the children only ten or eleven times. Her last *Page 536 
visit with the children prior to the October 25, 1984 trial occurred on May 18, 1984. That visit was last preceded by a visit in December 1983. The mother admitted in her testimony that she had not visited her eldest daughter "too awful much." There was also testimony that during two of her visits with the eldest daughter, the mother had told her that she intended to have her parental rights terminated.
According to § 26-18-7 (b), Code of Alabama 1975, because the children were not in the mother's custody, the trial court was authorized to consider the evidence of the mother's failure to regularly visit the children or to maintain consistent contact with them as a factor in determining whether to terminate the mother's parental rights. See In the Matter of Clingan,471 So.2d 435.
The evidence at the trial established a history of neglect and possible abuse, a present inability to adequately provide for the children, little possibility of the mother's rehabilitation, and a failure, for whatever reason, to visit or communicate with the children on a regular basis. Moreover, there is no indication in the record that other viable or less drastic alternatives existed than the children's permanent removal from the mother's custody and the termination of her parental rights. Under the 1984 Child Protection Act and the factors this court has considered in cases of this type, we find that the trial court's decision terminating the mother's parental rights is supported by clear and convincing evidence.
This case is due to be and is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.