The Lauderdale County Department of Human Resources (DHR) filed a petition to terminate the parental rights of David and Marthella Fessler to their daughter, Christina. After an ore tenus proceeding, the trial court ordered the termination of all parental rights to Christina. The parents appeal.
The Fesslers assert that the evidence presented was insufficient to sustain a judgment terminating their parental rights.
In determining whether to terminate parental rights, the trial court must make a two-prong finding. First, it must determine the child's dependency, as supported by clear and convincing evidence. Second, it must find that there exists no viable alternative to termination of custodial rights. In child custody matters, the controlling consideration is always the best interest of the child. Wallace v. Jefferson CountyDepartment of Pensions Security, 501 So.2d 473
(Ala.Civ.App. 1986). The trial court is presented the evidence ore tenus. Therefore, its decision is presumed to be correct and will be set aside only if the record reveals the decision to be plainly and palpably wrong. Wix v. Department of Pensions Security,464 So.2d 118 (Ala.Civ.App. 1985).
The record reflects that DHR became involved with the Fesslers' situation prior to the birth of Christina. Its involvement stemmed from a notification from the Department of Human Resources in New York that a male child born to Mrs. Fessler had been removed from her custody. It seems that Mrs. Fessler had taken the child to the hospital on several occasions with the complaint that he was having seizures. While the child was hospitalized, it was discovered that he had a skull fracture and cracked ribs. Following this incident, the child was removed from Mrs. Fessler's custody. The child has never been returned.
The circumstances surrounding the forfeiture of the child in New York are very similar to those circumstances surrounding Christina. Christina has been in DHR's custody since September 1, 1987. DHR became aware of the problems with Christina when her pediatrician notified the department that her health would be in danger *Page 302 
if she continued to live with her parents. The pediatrician reached this decision after Christina was discharged from Children's Hospital in Birmingham with a diagnosis of Munchausen's Syndrome by Proxy, a form of child abuse. Munchausen's Syndrome is a medical diagnosis that is used to refer to fictitious or made-up medical phenomenon. When the term "by proxy" is applied to it, it means that the individual involved is not manifesting the need or the problem, but someone else is causing the need or the problem. This diagnosis was based on the fact that a battery of doctors could find no medical evidence to substantiate Mrs. Fessler's complaint of seizures. The doctors were also aware of Mrs. Fessler's past history with her older child. Concerning his fears for Christina, her pediatrician stated the following:
 "My fear has been that because of the previous history of this other child whose episodes or presentation to emergency rooms and university hospitals was almost identical to those of Christina, and the lack of knowledge that I have of the mother working to any degree on the psychological aspects of what might be bringing on this tendency, I feel that the child is at risk to be back in the care of the mother, and I definitely fear for the child's life."
From September 1987 through September 1988, the Fesslers visited Christina in foster care on a monthly basis. During this period, there were home visits and overnight visits. When Christina returned from the home visits, her foster mother would report that Christina was "fretful and clingy." Her pediatrician found that, following the home visits, Christina usually had increased allergies and ear infections, possibly caused by her parents' smoking.
In March 1988, the Fesslers signed a service agreement with DHR, and home visits with a homemaker were begun. For several months, the Fesslers' living arrangements appeared promising. Shortly thereafter, however, Mr. Fessler lost at least two jobs and refused referral to job training and vocational rehabilitation services.
In September 1988, the Fesslers left Alabama and went to Ohio to be with Mr. Fessler's sick mother. The Fesslers later notified DHR that they would not be returning to Alabama because they had lost their home and Mr. Fessler did not have a job to return to. DHR assisted them in getting rehabilitative help in Ohio. The Fesslers, however, chose not to avail themselves of the many services offered. In fact, during the entire pendency of the case, Mrs. Fessler attended only one counseling session.
At the time of the hearing, the Fesslers were unemployed. Mr. Fessler had been unemployed since September 1988.
The Fesslers are currently living with his father and his stepmother in Ohio in a two-bedroom house. Their monthly income consists of $88, which they receive from the State of Ohio.
Christina is at present two years old and has been in foster care since she was four months old. She is well adjusted and has no medical problems. Because of her age, she is an excellent candidate for adoption proceedings. The parents' instability, lack of employment, failure to take advantage of rehabilitative efforts offered to them, and Mrs. Fessler's past history of child abuse support the trial court's decision that they are unable to adequately care for Christina. We find the trial court's determination of dependency to be based on clear and convincing evidence and to be in the child's best interest.
The Fesslers further contend that the trial court failed to exhaust all viable alternatives to termination of their parental rights. The alternative they suggest is that custody could have been granted to the paternal grandparents. They specifically assert that the trial court erred in denying a motion for home study of the paternal grandparents.
The Fesslers filed the motion for home study one week prior to the hearing. The trial court postponed ruling on the motion until after the hearing. Following the hearing, the trial court determined that the *Page 303 
grandparents were not a viable alternative to termination, therefore negating the need for the home study.
The trial court's determination that the grandparents were not a viable alternative is supported by the evidence. The record reflects that the grandparents were notified by DHR of the situation concerning Christina. The notification requested information about relatives and asked the grandparents if they would be willing to be considered as a relative resource. Several weeks prior to the termination hearing, the grandparents expressed concern and offered to help the Fesslers with Christina. The grandparents, however, did not petition the court for custody. Neither did they indicate that they were interested in assuming complete care, custody, and control of Christina. Furthermore, they were not present at the hearing.
At the time of the hearing, the Fesslers were living with the grandparents. Placing Christina in the grandparents' custody would therefore have the same effect as placing Christina with the Fesslers. Christina's retention in the same environment is a factor for the trial court's consideration in denying alternative custody. Matter of Moore, 470 So.2d 1269
(Ala.Civ.App. 1985) This factor, coupled with the grandparents' lack of interest in obtaining custody of Christina, supports the trial court's determination that the grandparents were not a viable alternative to termination.
There is clear and convincing evidence to support the trial court's decision to terminate the Fesslers' parental rights and its conclusion that no less drastic alternative was reasonable or available. Accordingly, the decision of the trial court is affirmed.
AFFIRMED.
ROBERTSON and RUSSELL, JJ., concur.