This case concerns the termination of parental rights.
The State Department of Human Resources (DHR) filed a petition to terminate the parental rights of T.D.M.V., the mother, and J.A.L.M., the father, as to T.M.M. and A.D.M. After ore tenus proceedings, the juvenile court entered a final order on October 30, 1990, terminating the parental rights of both parents. Only the mother appeals.
The dispositive issue on appeal is whether the trial court abused its discretion in terminating the parental rights of the mother.
On appeal, the mother's argument is twofold. She argues that DHR should be estopped under the doctrine of equitable estoppel from proceeding in this action due to the fact that the time agreed in the service agreement had not lapsed when DHR filed its petition seeking termination of her parental rights. Secondly, she argues that the trial court erred in finding that termination of her parental rights was the least drastic alternative. It is her position in this argument that DHR did not properly investigate and/or pursue all viable alternatives that were available and less drastic *Page 932 
than termination of the mother's parental rights.
In our careful and thorough review of the record in this case, we find that the brief history of this case began in October 1988, when the mother sought DHR's assistance in keeping the father away from the older child, A.D.M. At that time, the mother came to DHR and requested that it take the child because she claimed she and the child did not have a place to stay. In January 1989, when that child was only a few months old, DHR obtained temporary custody of this child by an order granting the mother's petition. Subsequently, the mother and father divorced and the second child was born in October 1989. In January 1990, DHR petitioned for the custody of the second infant alleging that this child was dependent and in need of supervision. During the time that DHR had temporary custody of both infants, it was working with each parent in an effort to reunite the children with one of the parents. As a part of the reunification efforts with the mother, a service agreement was reached and signed between the mother and DHR, with each party committing to certain progressive steps towards reunification. That agreement would be reviewed in June 1990. The infants were to be in foster care during this time, with visitation arrangements made for the mother to maintain contact. It is undisputed that the mother complied with the visitation portion of the agreement prior to the initiation of this action.
A social worker testified that the service agreement merely confirmed in writing what had been said to the mother since January 1989, regarding her responsibilities to reunite with her children; i.e., inter alia, the mother needed to stabilize her situation by establishing satisfactory housing arrangements for the children, to seek and maintain suitable employment, and to attend counseling at Hillside Mental Health Center in Elmore County. When DHR ascertained that the mother was making no effort to comply with this agreement, DHR prepared to file this action to terminate the parental rights. The action was filed in May 1990, one month prior to the review date of the service agreement. Ultimately, the final order terminating parental rights was entered on October 30, 1990.
We have reviewed the agreement and find that the mother's contention that DHR was prohibited from initiating any action in the best interests of the children prior to the June review date of the agreement is without merit. The agreement merely confirmed in writing what progressive steps the mother should take if she desired to reunite with her children. The agreement does not even purport to set a time limit for initiating an action to terminate parental rights. We find nothing in the agreement, or elsewhere, which bars DHR from performing its duty to protect the best interests of the children if and when it determines that a parent is not making reasonable efforts to reunite with her children. Clearly, DHR has the authority to file a petition for the termination of parental rights. Ala. Code 1975, § 26-18-5. The juvenile court had jurisdiction to hear the evidence concerning this petition and make a determination regarding the best interests of these children.See, Brown v. Alabama Department of Pensions Security,473 So.2d 533 (Ala.Civ.App. 1985).
We are cognizant of the well-established principle that when the trial court is presented the evidence ore tenus, its decision is presumed to be correct and will not be set aside unless it is plainly and palpably wrong. Brown, supra. In the instant case, that presumption of correctness applies.
The termination of one's parental rights is a solemn matter that deserves the law's utmost protection. Ex parte Beasley,564 So.2d 950 (Ala. 1990). A natural parent's prima facie right to the custody of his or her child can be overcome only by clear and convincing evidence that removal from the parent's custody is in the child's best interest. East v. Meadows,529 So.2d 1010 (Ala.Civ.App. 1988). The trial court must apply a two-pronged test to terminate parental rights when the State is the petitioner. See Beasley, supra. First, the court must determine from clear and convincing evidence that the child is dependent, *Page 933 
and second, the court must determine that there exists no remedy less drastic than termination of those rights.Varnadore v. State Department of Human Resources,543 So.2d 1194 (Ala.Civ.App. 1989). At all times in such proceedings, the best interests of the child are controlling. Ex parteBrooks, 513 So.2d 614 (Ala. 1987); Matter of Burnett,469 So.2d 627 (Ala.Civ.App. 1985).
The dependency of these infants is not at issue. The mother's argument regarding DHR's failure to properly and thoroughly investigate her living situation and possible relative alternatives generates much concern in this appeal. There was evidence to indicate that the mother's parenting skills may be deficient, but given the facts of this case, that is, the removal of each child within a few months of birth and the mother's youth and lack of education and economic resources, it is questionable if the mother was ever allowed an opportunity to prove whether her parenting skills were satisfactory, or if she could develop satisfactory parenting skills. At the time of this petition, the mother was separated from her third husband, who is mentally unstable, but with whom she hopes to reunite. She had resided in Alexander City with her mother, the children's grandmother, in a rented 3-bedroom home for approximately one year prior to these proceedings. There was testimony that DHR disapproved this home as placement without visiting or evaluating it partially because the grandmother disapproved of, and did not get along with, the mother's current husband.
The grandmother testified that only she and the mother lived in the three-bedroom home in Alexander City. The grandmother testified that although she had some health problems, they did not interfere with her ability to care for her grandchildren. She indicated a willingness to try to help the mother with the children, including allowing the mother and children to live with her and the grandmother would provide day-care for the children. The grandmother testified that no one from the Elmore County or Tallapoosa County DHR offices had ever been to her home in Alexander City to conduct a home evaluation. The grandmother testified that she had several brothers and sisters living in the area also. She testified that she loved her grandchildren and wanted to help them. Both the grandmother and the children's father testified that the mother was capable of taking care of the children by herself.
The mother's maternal aunt also testified to her willingness to help with the children. The aunt testified that her son has a large mobile home on her property that is empty and available to the mother and children. The aunt testified that she is disabled with back trouble and that her husband has a heart condition that required open heart surgery previously. She testified that neither she nor her husband works, but that they draw disability checks. The aunt further testified that no one had visited her home to conduct a home evaluation regarding these children and that she wanted to help. The social worker testified that the mother's aunt had been investigated and disapproved as a possible relative placement by DHR due to her health problems and her inability to get along with the mother's current husband.
While the record does not indicate that the mother is a model parent, there was evidence at the hearings in June and October that the mother wanted to improve her situation in order to reunite with her children. The mother testified that she had transportation problems visiting the children, getting to a job, and getting to counseling sessions. She testified that by the time she could make transportation arrangements for counseling, she understood it was too late. The mother testified that she had obtained employment only to lose it because she could not get transportation to and from work. She testified at the hearing in October that she was pregnant and was told by the doctors that she did not need to be working on her feet all day. She additionally testified that she was doing domestic work for a family only "two houses down the road" and that she could walk to that job. She testified that she lived in Alexander City with her mother and saw her current husband on weekends only because he lived in Chilton County.
There was evidence that the father has a large family in the area and that none of *Page 934 
his family was considered or investigated by DHR as alternative placements for the children. The father's stepfather testified that he was willing to add a bedroom to his home to care for the children if given an opportunity. He indicated a strong desire to help his stepson with the children.
The law is clear that the natural parent has a prima facie right to custody that can be overcome by clear and convincing evidence that removal from the parent's custody is in the child's best interest. Haag v. Cherokee County Department ofPensions Security, 489 So.2d 586 (Ala.Civ.App. 1986). In the instant case there was evidence of the mother's instability and immaturity in adjusting her circumstances to meet the needs of the children. While her parenting skills may be deficient, there was no evidence that she had abandoned the children or failed to maintain contact with them through monthly visitations allowed by DHR when she could arrange for transportation. There is nothing in the record indicating that she has done anything to harm the children. On the contrary, there was evidence that the mother loved the children and wanted to reunite with them but was having difficulty obtaining and maintaining employment and housing, which is due in part to her lack of education, training, and transportation. There is evidence in the record that the mother is attempting, with limited resources, to stabilize and improve her circumstances by living with her mother and trying to maintain suitable employment. There was testimony that the mother had transportation problems getting to work, to visits with the children, and to counseling sessions. DHR acknowledged that the mother had lived in another county with her mother the year prior to these proceedings. There is no indication that DHR attempted to work with the mother in that county, but rather, continued DHR services from Elmore County. This apparent hardship was imposed on the mother in spite of known difficulties regarding her transportation and resources.
The mother's past involvement with various men, her nomadic tendencies, and her inability to maintain employment may be considered by the trial court as the past history of this case.Varnadore, supra. Although the mother's past lifestyle has not been favorable to the proper upbringing of these children, she should be allowed a fair opportunity to rehabilitate herself. It does not seem reasonable to disapprove of her current living situation with her mother without performing a home evaluation. Further, from the record, it does not appear that the available relative resources have been properly evaluated and considered as possible alternatives prior to the termination of the mother's parental rights.
Termination of one's parental rights "is an extremely drastic measure, and once done, we know of no means of reinstating these rights." East, 529 So.2d at 1012. We have carefully and thoroughly reviewed the entire record in the instant case in light of the correct presumptions and principles and find that the trial court's decision to terminate the parental rights of the mother is not supported by clear and convincing evidence. The evidence in this case regarding the mother's inadequate parenting abilities indicates that this might be a proper case for the termination of the mother's parental rights; however, we are not convinced that all viable alternatives were properly investigated and considered. In fact, the testimony from the DHR social worker and the mother's relatives confirm that no home evaluations were ever performed. Under the facts in this case, termination of the mother's parental rights appears to be a drastic action which is unsupported by clear and convincing evidence.
Accordingly, we reverse this case and remand the cause for further evidence regarding the relative alternatives or for the entry of an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and RUSSELL, J., concur. *Page 935