RUSSELL, Judge.
Cecil B. Shields (Shields) filed a petition for custody of Antonio Ladaris Shields and Jatiea Pandora Price (children), alleging that he is the father of the children, that their mother, Pandora Price Shields, is deceased, and that Willie Mae Price, the maternal grandmother, would not allow him to have the children. The trial court found that Shields is the natural father of the children and that the interests of the children will best be served by placing custody with him. The trial court denied the grandmother’s motion for new trial, and she appeals. We affirm.
*1203 At the outset we note that, following an ore tenus proceeding, child custody matters are subject to the trial court’s discretion and that its judgment on these issues will be reversed only on a showing of an abuse of discretion or plain error. Self v. Fugard, 518 So.2d 727 (Ala.Civ.App.1987). In addition, it is well settled that the paramount consideration in child custody cases is the best interests of the child. Brown v. Alabama Dep’t of Pensions & Security, 473 So.2d 533 (Ala.Civ.App.1985). It is also well settled that in a contest between a parent and a nonparent the natural parent has a prima facie right to custody. Ex parte Terry, 494 So.2d 628 (Ala.1986); Self, 518 So.2d 727.
The pertinent facts are that the mother and Shields were married, that Antonio is their son, and that the mother and Shields were divorced on December 13, 1988. Subsequent to the divorce, the mother became pregnant, and on October 11, 1990, Jatiea was born. On October 16, 1990, the mother died.
Shields and the grandmother filed a joint petition asking the trial court to grant temporary custody to the grandmother until the court could make a custody determination regarding the best interests of the children. Shields then filed his petition for custody.
Home studies conducted by the Department of Human Resources indicated that both Shields’s home and the grandmother’s home are adequate and suitable for the children. However, we note that Shields has remarried, that he has an infant child, and that he and his family live with his parents in a five-bedroom home with an extra bedroom that would accommodate the children. He is working on plans to build a large home for his family. He and his wife each earn $35,000 a year in salary. The grandmother lives in a three-bedroom home, in which between seven and nine people live at varying times. She earns $75 a week and is receiving $93 a month in aid to dependent children.
Shields testified at trial that he is the father of Jatiea and offered into evidence a letter to him from the mother, in which the mother stated several times that she was pregnant with his child. In addition, a woman who stated that she was the mother’s best friend testified that the mother told her that Shields was Jatiea’s father.
In a motion for a new trial, the grandmother, for the first time, claimed that the mother had slept with other men. She attached to the motion her affidavit and an affidavit of Albert Jones, who claimed that he had been sexually intimate with the mother between November 1989 and May 1990. He did not claim to be the father of Jatiea and did not ask to be made a party or express a desire to assume any parental responsibility. However, based on this evidence, the grandmother in her motion for new trial asked the trial court to order genetic testing. The trial court denied the motion, holding that the evidence was available and could have been presented prior to trial.
The grandmother contends that the trial court erred in denying the motion for new trial. She claims that she is the only known blood relative of Jatiea and that she stands in the shoes of the parent and has a prima facie right to custody. She further claims that the court was required, pursuant to § 26-17-12, Ala. Code 1975, to order blood tests on application of the defendant or any other party. She also cites § 26-17-13(c), which, she claims, requires that a man identified as the alleged father shall be made a party defendant to the action. She states that Albert Jones and other men who slept with the mother must be joined as party defendants and that blood tests must be ordered to prevent irreparable harm.
Section 26-17-12(a) provides in pertinent part as follows: “Upon application of the defendant in a paternity proceeding or any other party to the action, the court shall order the mother, child and defendant to submit to one or more blood tests to assist the court in determining paternity of the child.”
Quite plainly, the purpose of the section is to “assist the court in determining paternity of the child.” However, in *1204 the present case the trial court, based on the evidence before it at trial, made a determination of the paternity of the child prior to the filing of the post-trial motion and prior to the request for blood tests. Because decisions regarding paternity were being made in Alabama courts long before blood tests were admissible evidence, Finney v. Eagly, 568 So.2d 816 (Ala.Civ.App.1990), we find no error or abuse of discretion in the trial court’s failure to order blood tests in this fact situation. Accordingly, the joinder of Albert Jones was unnecessary. Therefore, in view of the above, and since the grant or denial of a motion for new trial pursuant to Rule 59, Alabama Rules of Civil Procedure, is within the sound discretion of the trial court, Black v. Hodges, 429 So.2d 1028 (Ala.1988), the trial court’s judgment is affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.