This is a termination of parental rights case.
The Juvenile Court of Etowah County ordered the permanent termination of all parental rights of the mother, Josephine Moore, in her infant son, Chauncey Delano Moore, and awarded custody to the Alabama Department of Pensions and Security (DPS). The mother appeals. We affirm.
The right to maintain family integrity is a fundamental right, protected by due process requirements of the Constitution. Hamilton v. State, 410 So.2d 64 (Ala.Civ.App. 1982), citing May v. Anderson, 345 U.S. 528, 73 S.Ct. 840,97 L.Ed. 1221 (1953). See also Stanley v. Illinois, 405 U.S. 645,92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). This affords a parent a prima facie right to custody of its child. Matter of Mastin,462 So.2d 938 (Ala.Civ.App. 1984). The parent's prima facie right to custody, however, may be overcome where it is shown that such custody is contrary to the best interests and welfare of the child. In re Palmer, 387 So.2d 215 (Ala.Civ.App. 1980). In order to terminate parental rights, the court must make several findings. First, the court must find that the child is dependent based on clear and convincing evidence. § 12-15-65 (e), Code 1975. If dependency is found, the court must then find that there exists no viable alternative to termination of the parent's custodial rights. Glover v. Alabama Department ofPensions Security, 401 So.2d 786 (Ala.Civ.App. 1981). There must also be clear and convincing evidence that it would not be in the best interests of the child to be in the natural parent's custody. Matter of Rivera, 444 So.2d 858 (Ala.Civ.App. 1983). Since the trial court hears the evidence presented ore tenus, its decision is then presumed correct and will be set aside only after a careful search of the record reveals the decision to be plainly and palpably wrong. Williams v. StateDepartment of Pensions Security, 460 So.2d 1348 (Ala.Civ.App. 1984).
The mother first contends that the state failed to meet its burden of proving by clear and convincing evidence that her child was dependent and that it would not be in the child's best interests to be placed in her custody. We disagree.
The mother has a long history of mental instability and aggression toward others. At age seven she was found banging her head against a wall and striking herself at school. By age ten she had become such a discipline problem as to be permanently expelled from school. In 1975 she was hospitalized by DPS at the recommendation of a psychiatrist and diagnosed as schizophrenic and mildly retarded. While hospitalized, she suffered from hallucinations, was destructive, struck a staff member with a crutch, and reported hearing voices laughing at her and telling her to do bad things. Thirty-three times she was secluded for her own protection and for the protection of others. In late 1977 she was released.
In July 1981 her first child, Calandra, was born. The mother developed an acute psychotic episode after birth, including auditory and visual hallucinations, and was taken from the obstetrics recovery ward to the psychiatric ward. After being released from the hospital, she threatened to kill Calandra. She was picked up twice on lunacy charges and hospitalized in 1982 for taking an overdose of prescribed medicine. She was committed to the North Alabama Regional Hospital on May 20, 1982, where *Page 1271 
she threatened to kill other patients, to commit suicide, and stated that she was two persons, one of which did not need to live. She was released on August 6, 1982, shortly after having her parental rights to Calandra terminated.
The mother gave birth to Chauncey, the child at issue in this suit, on November 19, 1983. While pregnant she threatened suicide and to harm her unborn child. She threatened to kill a DPS social worker. Pursuant to a court order, DPS picked up Chauncey at the hospital on November 21 and, with the agreement of the parties, retained temporary custody. In December the mother called DPS to report she had lost control and almost set her apartment on fire. The mother was diagnosed in February 1984 as being a chronic schizophrenic with paranoid ideation and as having significant psychiatric disturbances. The psychiatrist concluded that she would remain at risk for potential neglect or abuse. In March 1984 she called a DPS social worker and split into two personalities, one of which threatened the social worker. In April 1984 she called DPS to report that she might hurt herself or her mother, who lived with her. During this time she was allowed to visit with Chauncey, but only in the presence of others and not in her home.
Based on the foregoing, we conclude that the State did present clear and convincing evidence that Chauncey was a dependent child and that his best interests would not be served by being placed in his mother's custody.
Next, the mother contends that the trial court failed to exhaust all viable alternatives to termination of her rights. We disagree.
She contends that the maternal grandmother was a viable alternative. The facts show otherwise. The grandmother and the mother live in the same apartment. Thus, placing Chauncey with the grandmother would in effect be placing him with his mother, and would thereby defeat the purposes of removing the child from her. The child's retention in the same environment is, of course, a factor for the trial court's consideration. SeeMiller v. Alabama Department of Pensions Security,374 So.2d 1370 (Ala.Civ.App. 1979). Also, the grandmother made no efforts until the day of the final hearing, and then only forty-five minutes after the proceedings had begun, to be considered as a custodian of the child. However, as noted by the trial court, the grandmother was given an opportunity to file a separate petition for custody of Chauncey before the court made an award of the child's permanent custody.
The father of Chauncey is also not an alternative. He has provided no support for his child and has not sought custody, though he was a witness in the case. He and the mother were never married, and see each other only intermittently.
Next, the mother contends that under Glover her parental rights can be terminated only upon proof that she has actually abused or neglected Chauncey. We do not agree.
Glover was not intended to mandate the finding of actual abuse or neglect in all cases. The statement relative to actual abuse or neglect was made in the light of the facts in Glover.
Moreover, these are factors to be considered by a court in a case involving termination of parental rights, but they are certainly not solely determinative of the outcome of every case.
The mother here is clearly unable to exercise her maternal duties. Indeed, given her protracted history of extreme mental disturbances, her record of aggression toward herself and others, her threats to harm Chauncey, and the likelihood that she will not improve, the trial court could have concluded it would be dangerous to place Chauncey in his mother's care. And, based on the facts of the present case, we do not believe the trial court was required to return the child's custody to the mother where there was no evidence of actual abuse or neglect. The code allows the termination of parental rights "[i]n appropriate cases," § 12-15-71 (a)(6), Code 1975, and leaves the interpretation of what is an appropriate case to the courts. We consider *Page 1272 
the case at bar to be an appropriate case for termination of parental rights.
Finally, the mother contends that she complied with the child placement agreement contract she had entered into with DPS and that DPS is now bound to return Chauncey to her. However, the mother fails to cite any authority in her brief for this contention, as required by rule 28 (a)(5), Alabama Rules of Appellate Procedure. Hence, we will not consider this issue.Dean v. Dean, 424 So.2d 1323 (Ala.Civ.App. 1982).
We conclude that the requisite elements to terminate the mother's parental rights have clearly been established. Accordingly, we affirm the decision of the trial court.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.