This is a termination of parental rights case.
Mark Christopher Colbert was born on November 15, 1983. At the time Rosa, his mother, was only seventeen years of age and unmarried; she would not disclose the name of the father. At his birth, Rosa voluntarily placed Mark with the Alabama Department of Pensions and Security (D.P.S.). D.P.S., in turn, was to arrange for Mark's adoption. Mark has lived in a foster home since that time. Recently, however, Rosa has reconsidered her decision to place Mark for adoption. Because of this, D.P.S. petitioned the Juvenile Court of Madison County for permanent custody of Mark and the termination of all parental rights. Prior to a hearing on this petition, D.P.S. was awarded temporary custody of the child. After an ore tenus hearing, the trial court granted the D.P.S. petition and terminated the rights of the natural parents, Rosa and Frank. (Rosa later named Frank, fifty-two years old, as the father and they have recently married.) The parents appeal from this decision.
The recently enacted Child Protection Act of 1984, effective May 8, 1984 and codified at § 26-18-1 to -10, Code of Alabama 1975, is pertinent in this case.
Section 26-18-7 (a) authorizes a juvenile court to terminate parental rights if it finds from clear and convincing evidence that the parents are unwilling or unable to discharge their responsibilities to and for the child. This section also lists a number of factors which the court may consider in *Page 1145 
determining whether parental rights should be terminated.
It is important to note two things about this section. First, the factors listed are nonexclusive, so that a court may also consider any other factors that are relevant to the child's welfare. Brown v. Alabama Department of Pensions and Security,473 So.2d 533 (Ala.Civ.App. 1985). Second, the section is actually a codification of only one of the possible grounds upon which a court may find a child dependent, and thus in need of an order concerning his welfare. The legislation is not intended to restrict such a determination of dependency to the circumstance in which the parents are unwilling or unable to discharge their responsibilities. See §§ 26-18-4, -7, Code of Alabama 1975; Brown v. Alabama Department of Pensions andSecurity, supra. As such, the basic principles for consideration for a parental rights termination case are not changed.
Although the natural parents have a prima facie right to the custody of their child, the best interest of the child is controlling. Wix v. Alabama Department of Pensions andSecurity, 464 So.2d 118 (Ala.Civ.App. 1985); Borsdorf v. Mills,49 Ala. App. 658, 275 So.2d 338 (1973). In order to terminate parental rights, the court must apply what is essentially a two-prong test. First, the court must find from clear and convincing evidence that the child is dependent. § 12-15-65 (e), Code of Alabama 1975. See § 26-18-7 (a), Code of Alabama 1975; Brown v. Alabama Department of Pensions and Security,supra. Once dependency is found, our court has stated that the trial court must determine whether less drastic measures than termination of parental rights would best serve the interest of the child. See Glover v. Alabama Department of Pensions andSecurity, 401 So.2d 786 (Ala.Civ.App. 1981); Miller v. AlabamaDepartment of Pensions and Security, 374 So.2d 1370
(Ala.Civ.App. 1979). The ore tenus rule applies to a termination of parental rights case. Hudgins v. State,418 So.2d 913 (Ala.Civ.App. 1982).
After applying the factors listed in the Child Protection Act to the facts in the record, we find that the juvenile court had clear and convincing evidence before it that the natural parents of Mark Christopher Colbert were unwilling or unable to discharge their responsibilities to the child. Further, we find that there was no less drastic alternative available.
Section 26-18-7 (a)(6) provides that one factor to consider is whether reasonable efforts by D.P.S. or a licensed public or private child care agency leading to the rehabilitation of the parents have failed. In this case, the juvenile court correctly determined that they had.
The record indicates that D.P.S., on many occasions, offered child care classes to Rosa. She repeatedly refused these. No adequate excuse for this behavior was given; especially, given her obvious inadequacies in the sphere of child care and parenting skills. There was much testimony to the effect that Rosa had problems interacting with the child. This included her inability to change diapers properly or to feed the baby from a bottle. It was also reported that she made unkind remarks about the child's appearance and ancestry, calling him a bastard.
There is also ample evidence that the parents failed to meet the needs of the child in accordance with the juvenile court's earlier order granting temporary custody to D.P.S. See §26-18-7 (b)(4). The temporary custody order set forth five specific requirements for Rosa to meet in order to enhance the possibility of her obtaining permanent custody of the child:
"1. Rosa [should accept] . . . counseling;
 "2. That she use her best efforts to obtain a stable home and living arrangements;
 "3. That Rosa . . . visit with said child at least weekly;
"4. That Rosa . . . enroll in baby care [classes];
"5. That [Rosa accept] . . . homemaker services." *Page 1146 
Of these five, the record indicates that Rosa only complied with the visitation requirement.
Rosa refused to accept any counseling or to attend any child care classes. She also refused homemaker services. Finally, no real effort was made to improve the stability of Rosa and Frank's home. The record clearly indicates that they have lived in an almost transient fashion, moving from a motel apartment to a cabstand and back to the motel. Only once did they rent a house; this did not last. This clearly shows the lack of a stable home environment in which to raise a child, especially, given the evidence which suggests that the parents had at least an adequate income level with which to seek suitable housing. The parents simply made no such effort.
Another factor, which may be considered when a child is not in the physical custody of his parents, is the failure of the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where they are financially capable of doing so. See § 26-18-7 (b), Code 1975. Though it is probable that Rosa, until her recent marriage, had no means by which to meet this requirement, it is clear that Frank was capable of providing such support. He has not done so. In fact, Frank has shown very little interest in the child at all.
Although Frank knew of Mark's birth by late November 1983, he did not even attempt to visit the child. According to the record, the only contact he had with Mark, before the time of the hearing below, was a single meeting in a park. This meeting had been arranged by Rosa. The only reason given for his apparent apathetical attitude toward the child was that, before that meeting in the park, nobody had asked him to visit the child.
Given the foregoing, it is clear that Mark was a dependent child. The next question we must address is whether any less drastic alternative existed. Our review of the record indicates that there was not one available.
Rosa's family had rejected both her and the child well before Mark's birth. That is why she approached D.P.S. Frank and his family have shown a complete lack of concern for the child. Not one member of either family contacted D.P.S. for visitation purposes, nor has any relative offered to care for the child. It is suggested in brief that Frank's grandparents might have cared for the child. It seems that they raised Frank. Frank is now fifty-two years of age. We doubt very seriously that his grandparents, given their advanced age, would either welcome the burden of caring for a child or be capable of carrying out such a task. We have stated before that old age is a proper matter to be considered in denying custody to a relative of the parent in a termination of parental rights case. Rivera v.State of Alabama, 444 So.2d 858 (Ala.Civ.App. 1983). Besides, no such offer to care for the child has been made.
In summary, we find that the juvenile court's decision to terminate the parental rights of Frank and Rosa is supported by clear and convincing evidence and thus, is not palpably wrong. There was no less drastic alternative available. As such, this decision is due to be and hereby is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.