This is a termination of parental rights case.
Following an ore tenus hearing, the Baldwin County Juvenile Court ordered the termination of the parental rights of Jessie Lee Wortham Buckhalter in her four-year-old son, Lazarus. Permanent legal custody of the child was vested in the Alabama Department of Pensions and Security (DPS), which was also given the authority to place the child for adoption.
The mother appeals. We reverse and remand.
The right to maintain family integrity is a fundamental right which is protected by the due process requirements of the United States Constitution. In the Matter of Moore,470 So.2d 1269 (Ala.Civ.App. 1985); Hamilton v. State, 410 So.2d 64
(Ala.Civ.App. 1982). A parent thus has a prima facie right to the custody of his or her child. Haag v. Cherokee CountyDepartment of Pensions and Security, [Ms. January 15, 1986] (Ala.Civ.App. 1986); In the Matter of Moore, 470 So.2d at 1270.
The parent's prima facie right to custody can only be overcome by clear and convincing evidence that the best interests of the child would be served by permanent removal from the parent's custody. Haag, [Ms. January 15, 1986]; In theMatter of Colbert, 474 So.2d 1143 (Ala.Civ.App. 1985); Brown v.Alabama Department of Pensions and Security, 473 So.2d 533
(Ala.Civ.App. 1985); In the Matter of Moore, 470 So.2d at 1270;Hamilton, 410 So.2d at 66. The primary consideration is always the best interests of the child in a proceeding to terminate parental rights. In the Matter of Colbert, 474 So.2d at 1145;Brown, 473 So.2d at 534.
It is well established that a determination to terminate parental rights is essentially a two-prong test. First, the trial court must find from clear and convincing evidence that the child is dependent, as provided in Ala. Code (1975), § 12-15-65 (e). Second, if dependency is found, the trial court must determine whether less drastic measures than termination of parental rights would best serve the interest of the child.In the Matter of Colbert, 474 So.2d at 1145; Landers v.Association for Guidance, Aid, Placement and Empathy,472 So.2d 1055 (Ala.Civ.App. 1985); In the Matter of Moore, 470 So.2d at 1270; In the Matter of Burnett, 469 So.2d 627 (Ala.Civ.App. 1985).
Based upon these principles of law, we find that reversal is warranted in this case. In so concluding, we are mindful of the fact that, because the evidence was presented to the trial court ore tenus, its decision is presumed to be correct and will not be set aside by this court unless it is plainly and palpably wrong. Haag, [Ms. January 15, 1986]; Landers, 472 So.2d at 1057. We reverse in this case because the trial court's decision is plainly and palpably wrong in failing to determine whether less drastic alternatives than terminating the mother's parental rights would serve the best interests of the child. Cf. Hamilton, 410 So.2d at 66.
The record reveals that the child Lazarus is one of the twelve children the forty-five-year-old mother had born over the years. She placed most of these twelve children with relatives to live. When the child was approximately ten months old, the mother "gave" him to her alleged half sister to live. Testimony indicated that the half sister was extremely fond of the child and wanted him to reside with her. The mother apparently visited the child and half sister frequently, and the child referred to both the mother and half sister as "mother" or "mama."
DPS became involved in the case when it was asked to investigate the half sister's petition to adopt the child. The mother had apparently consented to the adoption. DPS recommended that the half sister's petition be denied, and it subsequently filed petitions to have the child declared dependent *Page 1121 
and the mother's parental rights terminated.
At the hearing the DPS worker who had investigated the mother's home and interviewed the mother testified that the mother's home was clean and neat. She currently was residing with her three daughters, aged nine, seven, and two years of age. Although the mother's only income is aid to dependent children (ADC), the DPS worker testified that the three daughters appeared to be adequately clothed and nourished. The mother and daughters attended church regularly.
On cross-examination the DPS worker agreed with the mother's counsel that the mother had been an excellent mother to the three daughters living with her. She further agreed with counsel that the only reservation she had with returning the child to the mother was that the mother might "give" him away again. The mother had apparently told the DPS worker that she might eventually give the child to her mother (the maternal grandmother) to live. We note, however, that at the ore tenus
hearing the mother retracted this statement and testified that she wanted to raise the child and that she would not give him away. Certainly, the mother is entitled to a change of heart.
We emphasize the fact that this is not a case of gross child abuse or neglect. The evidence showed that the mother was a loving parent to those children living with her. There was no evidence to indicate that she would not be an equally loving mother to the child, if he also resided in her home.
Based upon all the evidence, it is this court's opinion that the trial court erred to reversal in terminating the mother's parental rights without first determining whether the child's best interests could be served by less drastic alternatives. We agree with the mother that the trial court, rather than terminating the mother's parental rights, could have returned the child to her under strict DPS supervision and under specific order of the court that, should she attempt to give him away in the future, her parental rights would terminate. Certainly this alternative would be in the better interest of the child than terminating the parental rights of the mother, whom the child still refers to as "mama."
In view of the above, other issues raised by the mother are pretermitted.
This case is reversed and the cause remanded to the trial court for proceedings not inconsistent herewith.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.