This is a termination of parental rights case.
Following an ore tenus hearing, the Juvenile Court of Tuscaloosa County ordered the termination of the parental rights of Ashley and Charly Fitzgerald in their one-and-one-half-year-old daughter, Rockette Juliette. Permanent legal custody of the child was vested in the paternal grandparents.
The parents appeal. We affirm.
The dispositive issue on appeal is whether there is clear and convincing evidence to support the trial court's decision that the parents' parental rights should be terminated based upon its determination that the child is dependent and that no less drastic alternative would best serve the interest of the child.Johnson v. State of Alabama, [Ms. February 26, 1986]485 So.2d 1185 (Ala.Civ.App. 1986); Buckhalter v. Department of Pensionsand Security, 484 So.2d 1119 (Ala.Civ.App. 1986); In the Matterof Moore, 470 So.2d 1269 (Ala.Civ.App. 1985); In the Matter ofBurnett, 469 So.2d 627 (Ala.Civ.App. 1985).
Because the evidence was presented to the trial court oretenus, its judgment is presumed to be correct and will not be set aside on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. Johnson, 485 So.2d 1185;Buckhalter, 484 So.2d 1119; Haag v. Cherokee County Departmentof Pensions and Security, 489 So.2d 586 (Ala.Civ.App. 1986). Applying this standard to the case now before us, we cannot say that the trial court's judgment is plainly and palpably wrong. There is clear and convincing evidence that supports the trial court's decision to terminate the parents' parental rights.
The primary consideration in a proceeding to terminate parental rights is always the best interest of the child.Buckhalter, 484 So.2d 1119; Brown v. Alabama Department ofPensions and Security, 473 So.2d 533 (Ala.Civ.App. 1985). Thus, although the natural parents have a prima facie right to the custody of their child, such right can be overcome by clear and convincing evidence that removal from the parents' custody is in the child's best interest. Johnson, 485 So.2d 1185; Haag,489 So.2d 586; Brown, 473 So.2d at 534.
In the instant case, such clear and convincing evidence consists primarily of testimony showing a history of the parents' mental illness and/or instability, their inability to care for the child, and their refusal to cooperate with the Department of Pensions and Security (DPS) to better the family's situation.
Approximately four months after the birth of the child in March 1984, the father was involuntarily committed to Bryce Hospital. He had apparently already been treated for mental problems prior to this time. There was testimony that, shortly after the father's committal to Bryce, the mother voluntarily relinquished custody of the child to the paternal grandparents. The trial court declared the child to be dependent and gave temporary legal custody to the grandparents in approximately July 1984.
In January 1985 the trial court conducted a hearing to review the situation of the parents and child. It found that the child was still dependent and retained custody in the grandparents. The trial court further set forth certain requirements for the parents before they could regain custody of the child. The mother was ordered to begin counseling to learn parenting skills, to find a source of income for herself, and to cooperate with DPS, which was to arrange visitation with the child. The father was apparently required to continue all counseling and medication. *Page 6 
At the time of the ore tenus hearing in October 1985, it was apparent that the parents had not followed the conditions or requirements that the trial court had set forth the previous January. The DPS case-worker assigned to the case testified that the mother refused to cooperate with DPS by seeking counseling or visiting with the child. The caseworker testified that the mother was hostile and had threatened both the caseworker and the grandparents. The mother, who became pregnant, also apparently refused to cooperate with the health department, which attempted to have her attend a prenatal health program.
The DPS worker further testified that, after the father was released from Bryce Hospital, apparently in the spring of 1985, the mother made numerous reports to DPS that he was physically abusive, obsessed with sex, and that he had fallen asleep several times while smoking, setting matresses and blankets on fire. The father denied the DPS worker any access to the home.
The trial court may well consider such evidence of the past history of the family, as well as evidence of its present circumstances. Johnson, 485 So.2d 1185; Haag, 489 So.2d 586. All of the above evidence clearly and convincingly supports the trial court's decision to terminate the parents' parental rights.
The parents contend, however, that a less drastic alternative than terminating their parental rights was available. Such alternative, they claim, would be to return the child to their custody, which would be monitored by the Tuscaloosa County Health Department. We find this contention to be without merit.
The evidence clearly shows a history of the parents' hostility to public assistance and monitoring. In light of such evidence, the trial court was justified in concluding that monitored placement of the child with the parents was not a viable alternative.
This case is due to be, and it is, affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.