HOLMES, Judge.
This is a termination of parental rights case.
After an ore tenus hearing, the trial court ordered the termination of the parental rights of Annie Nathan in two of her children, Maurice, age seven, and Shemika, age five. Permanent legal custody was awarded to the Department of Pensions and Security (DPS).
The mother, through able counsel, who has favored this court with an excellent brief, appeals and we affirm.
Viewing the record with the attendant presumptions accorded the trial court’s action, we find the following is pertinently revealed:
The mother is thirty-two years of age and single. She has seven children, who range from fourteen to three years of age.
On January 15, 1982, the mother was arrested for child abuse after her youngest child, Kelvin, was admitted to the hoápital for an “occipital fracture to the cranial area.” The child, who was two months old at the time, was reportedly thrown to the floor by the mother. The mother was subsequently convicted of the child abuse suffered by Kelvin. She was sentenced to a five-year prison term, a portion of which was to be spent at Bryce Hospital.
After receiving the report of the mother’s child abuse, DPS sought a pickup order for Kelvin. This request was granted, and Kelvin was placed in foster care. The re *447 maining children went to live with their maternal grandmother, pending the outcome of the criminal proceedings against their mother.
On March 9, 1982, DPS was contacted with regard to possible child abuse of Maurice Nathan, one of the children in this case. This child was taken to the hospital suffering second degree bums over twenty percent of his body. These burns reportedly occurred when Maurice’s ten-year-old sister attempted to give him a bath.
After their mother’s conviction, physical custody of the six remaining children was split between the maternal grandmother and an aunt. However, these children were later removed to foster care after reports of child abuse were received. The youngest child, Kelvin, was transferred from foster care to the custody of his father.
In October of 1983, the mother was released from prison. After receiving notice of the mother’s release, DPS discussed plans with her for the return of her children. A plan was outlined and approved by the court that would allow for the return of the children if the mother met certain requirements.
The plan required that the mother secure adequate housing for herself and the children. She was also required to attend classes on parenting and to receive counseling. The mother was also encouraged to seek employment. DPS provided “Homemaker” services in an effort to help the mother. Under the plan that DPS outlined for the mother, the children were to be returned gradually, with the oldest two children being returned first.
The mother was able to secure housing and began to attend counseling sessions. However, her attendance at her parenting classes and counseling sessions was very irregular.
The oldest four children were subsequently returned to the mother while the children in this case, Maurice and Shemika, remained in foster care.
DPS continued to monitor the situation in an attempt to restore custody of the remaining two children. However, it became more and more evident to DPS that the mother could not provide a stable home. The children lacked supervision as a result of the mother’s unexplained absence from the home. This lack of supervision resulted in boys sleeping overnight with the oldest daughter, who was fourteen years old; in the oldest son’s becoming involved in a youth gang; and in the children being seen in different sections of the city without any adult supervision.
DPS apparently concluded, after a continued lack of effort by the mother to supervise her children and a report by her counselor that the mother would be overwhelmed if all of her children were returned to her, that termination of her parental rights in Maurice and Shemika was advisable.
The mother contends on appeal that the trial court erred in terminating her parental rights. We disagree.
The trial court’s judgment in termination of parental rights cases is reviewed under the ore terms rule. Every favorable presumption of correctness must be afforded the trial court’s judgment, and it will not be set aside unless found to be plainly and palpably wrong. Johnson v. State of Alabama, 485 So.2d 1185 (Ala.Civ.App.1986).
It is well established that, in order for a trial court to terminate parental rights, it must first find, from clear and convincing legal evidence, that the child is dependent. Once dependency is determined, the court must decide if less drastic measures than termination of parental rights would better serve the best interests of the child. See Fitzgerald v. Fitzgerald, 490 So.2d 4 (Ala.Civ.App.1986).
In terminating parental rights, the trial court must find from clear and convincing evidence that it would not be in the best interests of the child to be in the natural parent’s custody. Matter of Moore, 470 So.2d 1269 (Ala.Civ.App.1985).
*448 After reviewing the evidence in this case, we find that there was clear and convincing evidence to support the trial court’s judgment that it would be in the children’s best interests that the mother’s parental rights be terminated. Therefore, the trial court was correct in terminating the mother’s parental rights as to Maurice and Shemika.
As indicated, the record reveals that the mother has not satisfied the requirements of the plan outlined to her by DPS at the time of her release from prison. The mother continues to show disregard for the supervision of her children. This lack of supervision, coupled with her past actions as outlined above, weighs heavily on our decision, given the ages of these two children (seven and five) and their familiarity and dependence on supervision, having been in foster care since 1982.
In view of the evidence, we cannot find that the trial court erred to reversal in terminating the mother’s parental rights.
This case is due to be, and it is hereby, affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.