This is a termination of parental rights case.
Following an ore tenus hearing, the Family Court of Jefferson County ordered the termination of the parental rights of Luverne Wallace in her five children. Permanent legal custody of the children was vested in the Alabama Department of Pensions and Security (DPS). DPS was also given the authority to place the children for adoption.
The mother appeals. We affirm.
The dispositive issue on appeal is whether there is clear and convincing evidence to support the trial court's decision that the mother's parental rights should be terminated based upon its determination that the children are dependent and that no less drastic alternative would best serve their interests.Fitzgerald v. Fitzgerald, 490 So.2d 4 (Ala.Civ.App. 1986); Johnson v. State of Alabama, 485 So.2d 1185
(Ala.Civ.App. 1986); In the Matter of Moore,470 So.2d 1269 (Ala.Civ.App. 1985); In the Matter ofBurnett, 469 So.2d 627 (Ala.Civ.App. 1985).
Because the evidence was presented to the trial court ore tenus, its judgment is presumed to be correct and will not be set aside on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. Fitzgerald,490 So.2d 4; Johnson, 485 So.2d at 1186; Haag v.Cherokee County Department of Pensions and Security,489 So.2d 586 (Ala.Civ.App. 1986). Applying this standard to the case now before us, we cannot say that the trial court's judgment is plainly and palpably wrong. There is clear and convincing evidence that supports the trial court's decision to terminate the mother's parental rights.
The mother is twenty-six years old. She gave birth to the first of her five children at the age of fourteen or fifteen. The children were fathered by two different men, to neither of whom the mother has ever been married. The children, two boys and three girls, range in age from approximately seven to ten years.
The mother's history with DPS extends back at least to 1979. In March of that year, the five children were declared dependent *Page 475 
and placed in foster care after the police responded to a call of a possible child neglect and found the five children, the oldest of whom was then four years old, alone in the family's apartment. The apartment was filthy, and all five children were dirty. Two of the children had burns, and one had an ear infection. There was also evidence of possible abuse or injury to the children prior to March 1979.
In July and August 1979, the mother entered into two service agreements with DPS, whereby she agreed to be available for scheduled appointments and visitation with the children, to attend mental health counseling, and to inform DPS of any changes in her living arrangements, finances, or marital status which could affect the stability of her home life. The DPS worker assigned to her case testified that the mother attempted to comply with the service agreements initially, but then began to miss scheduled visitations and mental health counseling.
In December 1979, the DPS worker learned that the mother had been arrested and placed in the county jail in connection with a robbery which occurred in October 1979. The worker met with the mother in the jail and attempted to arrange visitation with the children. The mother refused to set up visitation with the children in the jail.
Subsequently, the mother was transferred to Bryce Hospital for mental evaluation and to determine her competency to stand trial. She was diagnosed as a schizophrenic and remained in Bryce for approximately five years. In 1985 she was apparently determined to be competent to stand trial for the October 1979 robbery and was returned to prison. In June 1985, approximately one month prior to the trial of this case, the mother pleaded guilty and was sentenced to twenty-five years in the penitentiary. It was stipulated before the trial court that the mother admitted to shooting a woman in the head in connection with the robbery, although she testified that she remembers nothing about the robbery.
The mother contends that termination of her parental rights was improper because DPS made no effort to rehabilitate her, as required by Ala. Code (1975), § 26-18-7(a)(6). The evidence in the record is to the contrary. Prior to the mother's incarceration, the DPS worker entered into two service agreements with the mother and attempted to work with her. The evidence indicates that it was the mother who failed to comply with the agreements.
The evidence further shows that, after the mother's arrest, the DPS worker visited her once in the county jail and attempted to arrange visitation with the children. The worker then maintained contact with the mother through the social workers at both the jail and at Bryce. The worker testified that the mother never contacted her from the jail or Bryce to inquire about her children.
Under the above-described circumstances, we find that DPS did all that was required of it to rehabilitate the mother. Cf.In the Matter of Hutchins, 474 So.2d 1152 (Ala.Civ.App. 1985); In the Matter of Clingan, 471 So.2d 435
(Ala.Civ.App. 1985).
The mother also contends that termination of her parental rights was improper because it was based on her past history and not evidence of her present inability to care for the children. We disagree.
The past history of the mother was certainly relevant evidence which the trial court could consider in making its determination in this case. Fitzgerald, 490 So.2d 4;Johnson, 485 So.2d at 1187; Haag,489 So.2d 586. There was also, however, evidence that the mother is presently unable to care for the children.
A DPS worker testified that in late 1984 she learned from Bryce Hospital that the mother was still diagnosed as schizophrenic and that she was being treated with medication. More important, however, was the stipulation to the trial court that the mother had pleaded guilty to the robbery and shooting in connection therewith and that she had been given a twenty-five-year prison sentence. Although the mother testified that she hoped or expected to be paroled *Page 476 
in the near future, there was no evidence as to when she would be released or what she planned to do after her release.
The primary consideration in a proceeding to terminate parental rights is always the best interests of the children.Fitzgerald, 490 So.2d 4; Brown v. AlabamaDepartment of Pensions and Security, 473 So.2d 533
(Ala.Civ.App. 1985). The children in this case have been in foster care since 1979 and have families ready to adopt them. They have apparently not seen or communicated with the mother since 1979. Under all the circumstances, there is clear and convincing evidence that it was in the best interests of these five children that the mother's parental rights be terminated.See In re Brand, 479 So.2d 66 (Ala.Civ.App. 1985).
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.