This is a termination of parental rights case.
On March 31, 1987 the Juvenile Court of Madison County, Alabama found Christopher Daniels, the minor son of Melissa Daniels and Timothy W. Pickett, to be dependent. The court also found Pickett to be the natural father of Christopher and terminated his parental rights. The court further found Melissa to be unable to discharge her parental responsibilities and continued the case until September 25, 1987 to allow the mother to correct the parental problems she had encountered.
On September 25, 1987 the juvenile court terminated Melissa's parental rights and awarded legal custody of Christopher to the Department of Human Resources (DHR). Melissa appeals.
 "The primary consideration in a proceeding to terminate parental rights is always the best interest of the child. Buckhalter [v. Department of Pensions Security, 484 So.2d 1119 (Ala.Civ.App. 1986)]; Brown v. Alabama Department of Pensions Security, 473 So.2d 533 (Ala.Civ.App. 1985). Thus, although the natural parents have a prima facie right to the custody of their child, such right can be overcome by clear and convincing evidence that removal from the parents' custody is in the child's best interest. Johnson [v. State of Alabama, 485 So.2d 1185
(Ala.Civ.App. 1986)]; Haag [v. Cherokee County Department of Pensions Security, 489 So.2d 586
(Ala.Civ.App. 1986)]; Brown, 473 So.2d at 534."
Fitzgerald v. Fitzgerald, 490 So.2d 4 (Ala.Civ.App. 1986).
Before parental rights may be terminated, the juvenile court must apply a two-pronged test. First, the court must find from clear and convincing evidence that the child in question is dependent. Brown v. Alabama Department of Pensions Security,473 So.2d 533 (Ala.Civ.App. 1985); § 12-15-65 (e), Code 1975. Second, the court must decide whether there are available less drastic alternatives than termination of parental rights.Matter of Colbert, 474 So.2d 1143 (Ala.Civ.App. 1985).
Melissa's first contention is that the juvenile court erred in holding that Christopher was a dependent child.
A child may be declared dependent if it appears that a parent neglects or refuses, when able to do so or when such service is offered without charge, to get medical care for the child; that the conditions in which a child is kept endanger his health; that because of the habits or faults of a parent a child is failing to receive proper parental care; that a parent is unable to properly discharge his or her parental responsibilities. §§ 12-15-1 (10)(d), -1 (10)(f), -1 (10)(j), and -1 (10)(k), Code 1975.
The pertinent facts reveal that DHR's first contact with Melissa was when she was thirteen years old, unmarried, pregnant, and living with her mother and aunt in a Huntsville, Alabama motel room.
After the child, Christopher, was born, DHR provided homemaker care services for Melissa and the child. Later, Melissa moved to a Huntsville trailer park; shortly thereafter she moved again.
Homemaker services and ADC payments were given to Melissa until she left the *Page 843 
state in May 1984. Melissa returned to Huntsville in April 1985. She lived with her mother, stepfather, and Christopher in a Huntsville trailer park. About this time Christopher was hospitalized due to a failure to thrive. The child was not growing and looked pale and thin.
In July 1985 Christopher was again hospitalized for the same problem. At this time DHR obtained temporary legal custody of Christopher and placed him in foster care because of the problems the family was experiencing. In November 1985 the child was returned to Melissa's care on the condition that she remain in the home of Ms. Skipworth, an aunt of Melissa's who is also Melissa's legal custodian. In January 1986 Melissa left and moved in with her mother and stepfather. At this time DHR obtained custody of Christopher. When picked up, the child was very sick. Christopher was placed in a hospital, where he remained for about a week.
There was testimony that since January 1986 Melissa had moved about twelve times. At the time of the hearing Melissa was unemployed, had no independent source of income, and was dependent on her mother and stepfather for help. Melissa's mother and stepfather have drinking problems and are constantly separating.
The record shows that DHR attempted to supply Melissa with homemaker services and obtained help for the child from the Madison County Health Department. A representative of the health department stated that the child was constantly losing weight. On one occasion when the public health representative visited Melissa, the child was crying and appeared to be hungry. When it was suggested the child be fed, the only food available was a piece of cold meat and some peanut butter and bread.
At about this time the child was shown to have been suffering from diarrhea, was underweight, and his diet was deficient in several essential vitamins.
Recommendations were given to Melissa concerning the child's diet and care.
Medical testimony suggested that Christopher was suffering from a deprivation syndrome and that this malady was related to his home environment. A doctor stated that Christopher's ability to overcome his problems would depend on whether he received daily support from a caring individual.
Melissa stated that she had completed the eighth grade and planned to obtain a G.E.D. However, a court report filed by the Department indicated Melissa had previously dropped out of a G.E.D. course. She then enrolled in a training program offered by the employment service, but she was dropped from the program because she was arrested for public intoxication and had missed several classes. Her job training efforts on that occasion lasted about five weeks. Melissa did begin mental health treatment in August 1987 but has attended only two or three sessions.
It clearly appears from the evidence that Melissa has either refused or neglected to properly care for her child even when helpful services were provided to her. Because of Melissa's habits the child has failed to receive proper parental care and the conditions in which he was kept certainly constituted a danger to his health.
We conclude that the juvenile court's finding that Christopher is a dependent child is supported by clear and convincing evidence.
Melissa's next contention is that DHR failed to use reasonable efforts to rehabilitate her as a parent and that DHR failed to find a viable alternative to termination of her parental rights.
Melissa's contention that DHR failed to rehabilitate her as a parent finds little support in the record.
The evidence reveals that DHR attempted to provide homemaker services to Melissa while she was still pregnant. Since the child was born, DHR has continued to offer these services, caseworker services, ADC, foster care, public health services, and mental health counseling, all in an effort to enable Melissa to properly care for her child. DHR failed to receive an adequate response from Melissa. Consequently, *Page 844 
Melissa's allegation that DHR failed in its duty to rehabilitate her as a parent is without merit.
Melissa also argues that DHR failed to find a less drastic alternative to termination of parental rights.
The record reveals that DHR diligently pursued a relative alternative to termination of parental rights. It contacted several relatives of Melissa's about taking custody of the child, but they either did not want to assume the responsibility or they were disqualified for various reasons. The natural father was not considered a viable alternative since he had seen the child only twice and stated at trial that he did not want custody of the child.
The evidence adequately supports the finding that there were no viable alternatives to termination of Melissa's parental rights. No error here.
The judgment of the trial court is affirmed.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.