This is a termination of parental rights case.
The petition to terminate parental rights of S.T. (mother) and an unknown father of M.T. was filed by the Jefferson County Department of Human Resources (DHR) on May 21, 1990. The termination hearing was held August 8, 1990. The trial court's thorough order of August 9, 1990, states that the trial court found M.T. to be a dependent child, and that it would be in the best interest of the child to terminate parental rights of the mother and the unknown father. The mother appeals.
The dispositive issue is whether there was clear and convincing evidence to support the trial court's finding that there exists no viable alternative to the termination of S.T.'s parental rights.
The applicable law and our standard of review in cases such as this, where a mother's parental rights are terminated, were succinctly set out in Varnadore v. State Department of HumanResources, 543 So.2d 1194, 1196 (Ala.Civ.App. 1989), as follows:
 "In order to terminate parental rights, the court must make several findings. First, the court must determine that the child is dependent based on clear and convincing evidence. Second, the court must find that there exists no viable alternative to termination of the mother's custodial rights. Wallace v. Jefferson County Department of Pensions Security, 501 So.2d 473
(Ala.Civ.App. 1986). The trial court is presented the evidence ore tenus; therefore, this decision is presumed to be correct and will be set aside only if the record reveals the decision to be plainly and palpably wrong. Wix v. Department of Pensions Security, 464 So.2d 118 (Ala.Civ.App. 1985).
 "It is well settled that a natural parent has the prima facie right to custody. That right, however, can be overcome by clear and convincing evidence that the removal from the parent's custody is in the child's best interest. Haag v. Cherokee County Department of Pensions Security, 489 So.2d 586 (Ala.Civ.App. 1986). In determining the child's best interest, the court must consider whether a party to a custody proceeding is physically, financially, and mentally able to care for the child. Perry v. Department of Human Resources, 516 So.2d 659 (Ala.Civ.App. 1987). The court may determine a child to be dependent based on the totality of the circumstances. Carter v. Jefferson County Department of Pensions Security, 496 So.2d 66 (Ala.Civ.App. 1986)."
The record in the instant case reveals a long history of contact by DHR with this family. In about 1980, the maternal grandparents of M.T. began receiving aid to dependent children and other services for the benefit of this child's mother and her siblings. In 1986, an abuse and neglect report resulted in an investigation, which found that the maternal grandmother had been hospitalized in a mental institution and that the family was suffering financial hardships. A further abuse and neglect report was received later that same year, indicating that the maternal grandmother had refused to receive needed treatment and would not take medication. In May 1988, a report was received indicating that the children were being kept out of school in order to care for their parents. Thereafter, pursuant to proceedings by DHR, the mother herein, together with two other siblings, was placed in the protective custody of DHR. The children were later returned to their parents' physical custody on October 4, 1988, with DHR continuing their supervision. Again, the maternal grandmother *Page 642 
was ordered to receive treatment for emotional problems, which she continued to refuse.
It was later confirmed that the mother was pregnant and the trial court returned the mother and her sister, who was also pregnant, to DHR's physical custody in December 1988. Both the mother and her sister were placed in a Salvation Army maternity home. The mother alleges that her pregnancy was a result of being molested by a friend of her father's. Subsequently, on March 28, 1989, M.T., the child who is the subject of this proceeding, was born.
On March 30, 1989, DHR petitioned the court for a shelter care hearing in the matter of the custody of M.T., after which the trial court ordered the child to be placed in the custody of DHR. On March 31, 1989, a shelter care hearing was held in the matter of the mother. It was ordered that she remain in the custody of DHR and that a physical and psychological evaluation of the mother be performed. There was testimony by the psychologist retained by DHR that the mother's full scale IQ indicates that she borders the line between mild and moderate retardation. According to the psychologist, this level of retardation indicates that the mother can perform routine acts of self care, such as bathing, but cannot do much more relating to long-term personal care, such as managing family finances. The psychologist opined that someone with this IQ score cannot provide care for an 18-month-old child, primarily due to the limited ability to perceive the consequences of events, including events that involve questions related to the safety and protection of a child. The psychologist further opined that the mother needed a protective environment since others could easily take advantage of her. Additionally, the psychologist expressed concerns about the mother's ability to protect the child due to her own limitations if she were to live independently.
The social worker's testimony confirmed that the mother was unable to take care of herself and that she had no relatives capable of, or willing, to provide for her or take care of her and her child. The social worker was unaware of any homes licensed to provide foster care for the mother and child together.
The minor child's social worker testified and confirmed that the mother had visited the child once every two weeks since he had been placed in foster care, and that the child was in good health. She further testified that she did not know of any relative resources that would be willing to take legal custody of the child, and did not recommend placement with the maternal grandparents based on inadequate space in the home, as well as the mental condition of both the grandmother and grandfather. She also indicated that the maternal grandparents continue to reside in a one-bedroom home, although they have been encouraged to seek more adequate public housing. It was further her opinion, based on her experience, that the mother cannot adequately provide for the child. She did not believe that the mother would ever be able to provide adequate care for the child based upon the fact that the mother required supervision and would not ever be able to live independently. Neither the social workers nor the psychologists were familiar with any programs available in the area in which retarded parents took care of their children.
Finally, the Pre-Intelligence Cognizant and Development Test indicated that the child was a little below average, and, while he had no problems at this time, he was considered to be at risk because of his mother's retardation. The child's social worker stated that she thought he was adoptable.
Based on the foregoing, we find the court's determination for dependency to be based on clear and convincing evidence, and to be in the child's best interest. Further, the court had before it evidence of the inability of the mother to care for herself, or her minor child, and that no family resources or other viable alternatives were available, other than to terminate parental rights. Certainly the maternal grandmother and grandfather, due to their mental conditions and inadequate living arrangements, *Page 643 
are not a viable resource, and no testimony was offered as to any other viable resource other than some type of government care program. The court was warranted in considering the past history of this case as well as present circumstances.Haag, supra. The child's retention in the same type environment is also a proper factor for the trial court's consideration in determining if there is a more viable alternative to termination. Matter of Moore, 470 So.2d 1269
(Ala.Civ.App. 1985).
The record is clear that DHR's persistent attempts to provide and locate relative resources were unsuccessful. There is clear and convincing evidence to support the trial court's conclusion that no less drastic alternative was available, and its decision to terminate the mother's parental rights. Accordingly, the decision of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.