PER CURIAM.
Following the presentation of ore tenus evidence, the trial court permanently terminated all parental rights of L.F. and R.B. (parents) to their child, Baby Boy F. Permanent legal custody of the child was vested in the Alabama Department of Human Resources (DHR) and from this order, the parents appeal.
The dispositive issues raised by the parents on appeal are: 1) whether the testimony showed there to be no less drastic measures other than terminating the rights of both parents; 2) whether the testimony provided clear and convincing evidence to justify the termination of the mother’s and *1381 father’s parental rights; and 3) whether the parents’ procedural due process rights were violated in that they contend they were denied an adjudicatory hearing on the merits of the original petition.
In general, we note that parents have a prima facie right to the custody of their child. In re Moore, 470 So.2d 1269 (Ala.Civ.App.1985). This prima facie right may be overcome by clear and convincing evidence establishing that the child’s best interests and welfare will be served by permanent removal from the parent’s custody. East v. Meadows, 529 So.2d 1010 (Ala.Civ.App.1988). Further, the best interest of the child is the primary consideration in proceedings to terminate parental rights. East. Also, before parental rights may be terminated, the trial court must find, by clear and convincing evidence, that the child is dependent and that no viable alternatives to termination exist. In re Moore.
We also note that the determination made by the trial court following an ore tenus proceeding is presumed correct and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. Brooks v. State Dep’t of Human Resources, 513 So.2d 632 (Ala.Civ.App.1987).
In addressing the parents’ first two issues together, we note that the statutory authority for such termination is found in § 26-18-7, Code 1975. The trial court is given the authority to terminate parental rights if it finds, from clear and convincing evidence, that the parents are unable or unwilling to discharge their responsibilities. Some of the considerations which the trial court is required to use are whether the parents have abandoned the child, whether the parents have problems with drugs or alcohol, and whether reasonable efforts to rehabilitate the parents have failed. Section 26-18-7(a), Code 1975. If the child is not in the physical custody of its parent or parents, the trial court also may consider such circumstances as whether the parents have provided material needs for the child, whether the parents have maintained regular, scheduled visits with the child, and whether the parents have adjusted their circumstances to meet the needs of the child according to agreements reached in court. Section 26-18-7(b), Code 1975.
The trial court heard testimony of Paula Gulledge, a DHR social worker; Julia Reeves, a homemaker with DHR; Don Mayfield, the director of the Elmore County DHR; Marilee Tankersley, an educator in parenting skills; Sandra McLendon, a service supervisor for DHR; and the parents of the child.
The record indicates that Baby Boy F. was born on December 19, 1989, to L.F. and R.B. The parents are married under common law. At the time of trial, the mother was 34 years old and the father was 39 years old.
On December 21, 1989, Baby Boy F. was placed in temporary custody of the Elmore County Department of Human Resources on the authority of a pick-up order. The pick-up order was initiated after the father was observed holding the baby under a faucet at the hospital and the mother failed to take measures to protect the baby.
After Baby Boy F. was placed in the temporary custody of DHR, visits were scheduled between the parents and the child in an attempt to reunite the family. Paula Gulledge testified at trial that she personally observed several of these visits and found that the mother was not able to cope with the stress of the baby crying and would hand the baby to the father at these times. She testified further that the mother and father made attempts to bathe and dress the baby, but were unorganized, and that attempts to breast feed the baby were unsuccessful and upsetting to both the baby and the mother.
Ms. Gulledge testified that a standard visiting schedule, for parents in similar situations, is generally one hour a month and these visits take place at DHR’s offices. The parents in this case were afforded one and a half to three hour long visits each week either at their home or at the DHR office. The record further reveals that a service agreement was initiated between the parents and DHR. Ms. Gulledge testi *1382 fied that the service agreement was not complied with in that the mother did not keep all scheduled visits, and a psychological evaluation was never furnished to DHR. Ms. Gulledge testified that she contacted the mother’s parents to obtain information as to whether any family member would be willing to be a resource for the child and that these attempts were fruitless. On occasional visits, the father was asked to be away from the home in order for the DHR worker to observe the mother and the baby alone. On several of these visits he refused to leave. Ms. Gulledge testified that, in her opinion, neither the mother nor the father are competent to parent the child.
Julia Reeves testified that she observed two home visits with the parents and the child. Based on these visits, Ms. Reeves testified that she did not observe sufficient parenting skills by the parents for the child to be left in their custody.
Marilee Tankersley, an instructor in parenting skills, set up parenting classes for the parents. It was her testimony, after several sessions with the parents, that the parents were not as comfortable with the child as she would have liked them to be.
Don Mayfield, the Director of the Elmore County DHR, testified that psychological counseling may be funded by DHR, but it is for children only and not for adults. As Director of DHR, Mr. Mayfield testified that he does not normally review parental termination cases. Nonetheless, he reviewed this case, and at trial he testified that, in his opinion, it was in the best interests of the child that parental rights be terminated and the child be placed for adoption.
Further review of the record indicates that the father received $2900 in annual income for the year of 1988, and he has not filed income tax returns for the previous two years. The father testified that his parents gave him a $10,000 gift last year. The mother testified that she also receives gifts from her family during the year. The mother has never held a full time job. The parents have not provided financial support for the child while in the custody of DHR.
Moreover, while Baby Boy F. was in the temporary custody of the Department of Human Resources the parents traveled to New York, and failed to contact or visit their child for the four months they were out of the state of Alabama.
The record reflects that the mother has been in counseling since she was fourteen years old and that she was admitted to Columbia Presbyterian Hospital for over one month for a mental illness in the late 1980s, where she was prescribed Haldol and Lithium. The mother again sought counseling at Mount Sinai Hospital in 1990 because she testified “I was depressed over the world situation.” At the time of trial, the mother was under the supervision of a physician and was prescribed Trilafon, a drug used to prevent a psychotic outbreak due to stress. The father sought counseling in the past for emotional problems arising from a broken relationship. Although the trial court, in its final order, did not find that the father suffered any mental illness, it did note that his “relational skills are such that it would adversely affect his ability to raise a child.”
To support the finding that there were no less drastic measures other than termination of parental rights we look to the testimony of Ms. Gulledge. She testified that she attempted to find relatives that would be willing to be a resource for the child, but she was unsuccessful in her attempts.
After reviewing the record thoroughly, it is evident that the trial court had clear and convincing evidence before it to support its determination that there were no less drastic measures other than the termination of parental rights.
We note from the record testimony that the parents’ final argument, whether the parents’ due process rights were violated in that they contend they were denied an adjudicatory hearing on the merits of the original petition, was properly raised at the trial level. In addressing this issue, a careful review of the record reveals that a hearing pursuant to § 12-15-60, Code 1975, was held on December 22, 1989, following *1383 the pick-up order. Present at this hearing were R.B., the father of the child, Paula Gulledge, a social worker for DHR, Keith Howard, the attorney representing DHR, and Jacqueline Austin, the Guardian Ad Litem for the child. The court, after finding the child to be dependent, placed the child with the Elmore County DHR and continued the hearing until December 29, 1989, because the mother was still in the hospital. After the second hearing, at which the mother was present and an attorney was appointed to represent the parents, the court, after taking further testimony, held that the order of December 22, 1989, was to remain in effect, and the parents were ordered to attend parenting classes. Therefore, the parents were not denied a hearing on the original petition, and their procedural due process rights were not violated.
We have fully reviewed the record and find that the determination made by the trial court was sufficiently supported by the evidence presented at trial so as not to be plainly and palpably wrong. This case is due to be affirmed.
AFFIRMED.
All the Judges concur.