THIGPEN, Judge.
This is a termination of parental rights case.
D.A.M. and C.L.M. (the petitioners), filed a petition in the Juvenile Court of Henry County, Alabama, seeking to terminate the parental rights of J.R. (the mother), and an unknown father, as to J.A.R., a female infant (the infant). Concomitantly, they filed a petition in the probate court to adopt the infant. That petition was later removed to the juvenile court. Upon determining that the mother was indigent, the juvenile court appointed an attorney to represent her, and it also appointed a guardian ad litem for the infant. After receiving the evidence ore tenus, the juvenile court ordered the termination of all parental rights of the mother and putative father, and granted a petition for adoption. Hence, this appeal.
The dispositive issue on appeal is whether the decision to terminate the mother’s parental rights is supported by clear and convincing evidence.
The record discloses that the petitioners are a husband and a wife, who reside to *611 gether as a family unit with three of the wife’s children by a prior marriage and the infant. C.L.M. and the mother are first cousins. The mother was 23 years of age at the time of trial and resided in recently-acquired government rental housing in Columbus, Georgia, with her two-year-old son (son). The mother has not been employed since 1986, and alleges that she recently enrolled in a technical college. The infant was born June 4, 1990. C.L.M. first saw the infant when she was six or seven days old, in the home of C.L.M.’s grandmother. At that time, the mother was not present, and the infant appeared to be hungry and unattended. C.L.M. inquired about the infant’s welfare, and a day or two later, the mother called C.L.M. and told her to come and get the infant. C.L.M. went to Columbus, Georgia, took physical custody of the infant, and began exercising normal parental care, including the purchase of diapers, clothing, food, and necessities for the infant. About a month later, C.L.M. returned the infant to the mother at the mother’s request; however, a few days later, the mother again called and requested that C.L.M. take the infant, because the mother had nowhere to live and could not provide for the infant. The infant thereafter remained in the petitioners’ physical custody.
Two or three months later, the petitioners received another call from the mother, stating that the mother had no place to live. The petitioners thereafter went to Columbus, Georgia, brought the mother back to Alabama, and attempted to obtain housing and assistance for the mother through the Alabama Department of Human Resources (DHR); the mother, however, stated that she never intended to establish a home in Alabama, and that she wanted to return to Georgia because she was dissatisfied with the amount of assistance that would be provided by the State of Alabama. C.L.M. told the mother that it would be in the infant’s best interests to remain with C.L.M. until the mother established a home, and then C.L.M. would return the infant to the mother. The mother replied that C.L.M. could keep the infant. Later, when the mother called and asked C.L.M. to return the infant, C.L.M. told the mother that she did not have the money to make the trip since she had quit her job to keep the infant. C.L.M. advised the mother that she could take the infant, but the mother did not do so, stating that she had no transportation.
During the Christmas season, the mother returned to the petitioners’ home to retrieve some of her belongings; however, she did not visit the infant. During this same time period, the Georgia Department of Human Resources called C.L.M., requesting that she pick up the mother’s son, because he had been left for about a week with an aunt who was unable to care for him, and because the mother’s whereabouts were unknown. The mother returned, however, and picked up the son before C.L.M. arrived.
The mother testified that she had been living “outdoors” — “in the streets”, and that she could not have cared for the infant during the time that the petitioners did so. There was evidence regarding the mother’s involvement in criminal activity, and she admitted spending ten days in jail for disorderly conduct, and being arrested for an assault. The mother further testified that the putative father had never been adjudicated as the father, had never paid child support, and is married to another woman and has a family. She further alleged that the putative father was aware of the proceedings, but failed to appear.
After receiving the evidence ore tenus, the trial court made lengthy and specific findings of fact. Those factual determinations are presumed correct, and will not be disturbed on appeal, unless the judgment is unsupported by the evidence, and therefore is palpably wrong. Lee v. Jackson County Department of Pensions & Security, 470 So.2d 1294 (Ala.Civ.App.1985). Ala.Code 1975, § 26-18-7(a) requires there to be clear and convincing evidence, competent, material, and relevant in nature, before the trial court may terminate the parental rights, and, if there was such evidence before the trial court, we are not authorized to disturb the trial court’s decision. Ray v. *612 State Department of Pensions & Security, 485 So.2d 349 (Ala.Civ.App.1986).
The petitioners correctly assert that to terminate parental rights, the trial court must apply a two-pronged test. First, the trial court must find from clear and convincing evidence that the child is dependent. Ala.Code 1975, § 12-15-65(e). Upon a finding of dependency, the court must next decide if less drastic measures than the termination of parental rights would better serve the interests of the child. Varnadore v. State Department of Human Resources, 543 So.2d 1194 (Ala. Civ.App.1989). The mother offered nothing to dispute the trial court’s conclusion that she is not and has not been capable of caring for the infant. A finding of dependency was warranted due to the mother’s failure to provide support for, or to visit or maintain contact with the infant, or to adjust her manner of living to accommodate the needs of the infant. This, therefore, presents the second prong of the test, i.e., did the trial court consider less drastic measures than termination of the mother’s parental rights? The trial court considered all known viable alternatives to the termination of parental rights, including, but not limited to 1) placing temporary custody with DHR while the mother enrolls in parenting skill classes, and 2) placing physical custody with the petitioners, with the mother being allowed visitation rights.
The trial court examined the evidence and rejected these alternatives, finding specifically that the mother “is destitute, being homeless from time to time, and living in the streets. She has no job nor potential of getting one in the near future. She already has a child living with her, which child is frequently dependent upon handouts from friends and relatives in order to eat.” The trial court also found that contacts and visits with the infant were extremely rare, and that in the trial court’s opinion, her attempts to regain custody were “mostly an attempt to increase [the motherj’s welfare benefits from the State of Georgia.”
The mother contends that the trial court did not consider her present situation and improvements just prior to the time of the hearing before deciding to terminate her parental rights. The record evidence discloses, however, that the mother still had not established a stable home or lifestyle, nor had she sought or obtained employment, nor had she sought support from the infant's putative father. Other than recently obtaining government housing for herself and her son, there was no evidence of any improvement in the mother’s ability to care for her children. In fact, when questioned regarding counsel-ling services through the Alabama or Georgia Department of Human Resources, the mother responded that she never needed any. While the mother may have made some improvement, it is not necessary to prove that her prior condition was permanent in order to terminate her parental rights. The condition has been of such duration and nature as to render her unable or unwilling to care for the minimal needs of her child. D. G. v. State Department of Human Resources, 569 So.2d 400 (Ala.Civ.App.1990). Further, past history, as well as present circumstances, may properly be considered by the court in a termination proceeding. Fitzgerald v. Fitzgerald, 490 So.2d 4 (Ala.Civ.App.1986). Still further, the mother’s success or lack thereof in raising her other child is a factor for the court to consider in determining whether the evidence supports the termination of parental rights. Hayes v. State Department of Human Resources, 563 So.2d 1035 (Ala.Civ.App.1990). The mother’s admitted prior unsuccessful involvement with the Georgia DHR, leaving the son with relatives who were unable to care for him, and dependency upon relative resources for handouts demonstrate her lack of success in parenting. The evidence was thus sufficient for the trial court to conclude that there was no other viable family alternative, as most of these relatives were elderly and without sufficient resources of their own. Clark v. State Department of Human Resources, 545 So.2d 797 (Ala.Civ.App.1989).
While the parent of a ehild has the prima facie right to custody, the overriding consideration is always the best in *613 terests of the child. McCullough v. State Department of Pensions & Security, 500 So.2d 1093 (Ala.Civ.App.1986). In determining the best interest of the child, the court must consider whether the parent is physically, financially, and mentally able to care for the child. Matter of Von Goyt, 461 So.2d 821 (Ala.Civ.App.1984). Also, the environment into which the court would be releasing the child is a factor to be considered. Brown v. Alabama Department of Pensions and Security, 473 So.2d 533 (Ala.Civ.App.1985).
The court found that the petitioners provided a home with a wholesome environment; that they had rendered love and cared for the infant and were capable of providing for her physical and emotional needs. In view of all the evidence, we conclude that the court’s decision to terminate the parental rights of the mother was supported by clear and convincing evidence, competent, material and relevant in nature, and that no less drastic measures than the termination of the parental rights of the mother would best serve the interests of the infant.
For the foregoing reasons, the decision of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.