ROBERTSON, Presiding Judge.
On January 30, 1992, E.F.E., maternal great-aunt of T.E.H. (minor child), filed a petition to terminate the parental rights of M.H., the mother. The petition claimed, inter alia, that the great-aunt had been awarded temporary custody of the minor child in July 1990; that since July 1990, the mother had been incarcerated in a state penal institution; that the mother had failed to provide for the support, care, and maintenance of the minor child for over one year; and that pursuant to § 26-18-3(1) and § 26-18-7, Code 1975, the mother should be found to have abandoned the minor child. The great-aunt requested the trial court to enter an order terminating the parental rights-of the mother and vesting all legal rights and responsibilities for the care, maintenance, and support of the minor child with her.
The great-aunt filed an amended petition to terminate parental rights, which further alleged that the father of the minor child is R.E.G., and requested that the trial court terminate the parental rights of both the father and the mother.
On March 9, 1992, the father filed a stipulation and consent to the granting of the petition to terminate parental rights, which stated that it is in the best interests of the minor child to reside with the great-aunt.
Following an ore tenus proceeding, the trial court entered a formal custody order which terminated the parental rights of the father and the mother and awarded permanent custody of the minor child to the great-aunt. The trial court found:
“that said [minor] child is a dependent child; and that the mother ... voluntarily relinquished custody of said [minor] child unto [the great-aunt] ... on numerous occasions commencing shortly after the [minor] child’s birth; and that said [minor] child has been in the custody of [the great-aunt] for more than thirty-five months next preceding this hearing; and that said [minor] child is bonded and attached to [the great-aunt and the great-aunt’s husband]. The court further finds that the mother ... is incarcerated in prison serving a fifteen-year sentence for robbery and that the mother led such a lifestyle prior to her incarceration that such lifestyle was injurious and not in the best interests of this [minor] child and other siblings so that other family members took care of her other children. The court ... find[s] that it is in the best interests of this [minor] child ... [to] remain in the permanent care, supervision, and custody of [the great-aunt].”
*454 The mother argues on appeal that the trial court erred in terminating parental rights. She contends in her brief that “there was no clear and convincing evidence that termination of parental rights was in the child’s best interests nor was there any evidence that the trial court considered alternatives to termination.”
We first note that a parent has a prima facie right to custody of his or her child. Moore v. State Dep’t of Pensions & Security, 470 So.2d 1269 (Ala.Civ.App.1985). This right can be overcome only by clear and convincing evidence that the child’s best interests would be served by permanently removing the child from the parent’s custody. East v. Meadows, 529 So.2d 1010 (Ala.Civ.App.1988). The trial court’s determination on these matters is presumed correct on appeal, and we will not reverse absent a determination that the court’s judgment is so unsupported by the evidence as to be plainly and palpably wrong. Brooks v. State Dep’t of Human Resources, 513 So.2d 632 (Ala.Civ.App.1987).
The mother testified that, at the time of trial, she was 21 years old; that she had completed the ninth grade; that she had four children; and that she was then serving a 15-year sentence for second degree robbery for which she had been in prison since May 22,1991. Further, she testified that her only employment was for seven months as a cashier. She testified that she visited with the minor child five or six times before her incarceration and that the visits took place at the minor child’s maternal great grandmother’s house.
The minor child’s maternal grandmother testified that the mother’s youngest child was born while the mother was in prison. She testified that she is raising the mother’s other three children. The oldest child, who is five years old, has lived with the grandmother for three years, and the other children are ages two years and two months old. The grandmother testified that she receives Aid for Dependent Children benefits (ADC) and food stamps to help support the children, and that she works. She testified that the minor child sees her brothers and sister every day in that, while she is at work, the three children are with their great-grandmother, who lives next door to the great-aunt. She testified that she is not financially able to raise the minor child, but that the great-aunt and the great-aunt’s husband make good parents. Further, she stated that, before the mother was incarcerated, the mother’s only source of income was ADC, and that the mother and the children lived with her. The grandmother testified that two of the mother’s children have the same father, and that the other two have the same father but that she was never married. She testified that the great-aunt is better able to provide a good environment for the minor child than the mother.
The great-aunt’s husband testified that, since July 1990, the minor child had lived with his family and that the minor child, at the time of trial, was three years old. He testified that he and the great-aunt have an eleven-year-old daughter of their own, and that he has been employed with Chevron for two years. He testified that the mother has not provided any support for the minor child . in the last two years. He testified that they want to adopt the minor child.
The great-aunt testified that on July 30, 1990, she and her husband were awarded temporary custody of the minor child and that the minor child had come to live with them in 1988. She testified that the mother telephoned her house collect once, but that she did not speak to the minor child. She testified that she is a registered nurse. Further, she testified that she never interfered with the mother’s having contact with the minor child, although she and her husband did not take the minor child to the prison to visit her. She testified that within the last year the mother had not attempted to contact the minor child.
After a careful review of the record, we cannot find that the trial court’s judgment is so unsupported by the evidence as to be plainly and palpably wrong. It is apparent from the record, as the father contends in his consent to termination, that termination of parental rights was in the child’s best interests. It is also apparent that no viable alternative existed that would better serve the *455 best interests of the child. Accordingly, the judgment is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.