23 So.3d 1156 (2009)
D.P.
v.
MADISON COUNTY DEPARTMENT OF HUMAN RESOURCES.
2080243.
Court of Civil Appeals of Alabama.
May 8, 2009.
Brian D. Clark of Clark, Smith & Messervy, P.C., Huntsville, for appellant.
Sharon E. Ficquette, gen. counsel, and Elizabeth L. Hendrix, staff atty., Dept. of Human Resources, for appellee.
BRYAN, Judge.
D.P. ("the father") appeals from judgments of the Madison Juvenile Court ("the juvenile court") terminating his parental rights to P.P., a girl born in March 2003, and L.P., a boy born in May 2004 (collectively referred to hereinafter as "the children").[1]
The record reveals the following pertinent facts. The Madison County Department of Human Resources ("DHR") first became involved with the children in May 2007, when DHR received a report asserting that the children had inadequate supervision and inadequate food and that the father and L.L. were ("the mother") using drugs in the presence of the children. After an investigation, DHR took custody of the children; on July 11 2007, based on a stipulation of the parties, the juvenile court found the children to be dependent and authorized their placement in foster care.[2] On April 22, 2008, DHR petitioned *1157 the juvenile court to terminate the parental rights of the father and the mother to the children. In the petitions, DHR stated that the juvenile court had previously adjudicated the children to be dependent, that the condition of the parents was such that they were unable or unwilling to properly care for the children, that that condition was unlikely to change in the foreseeable future, and that DHR had been unable to locate a suitable relative to assume custody of the children.
On October 6, 2008, the juvenile court held an ore tenus proceeding regarding DHR's petitions to terminate the father's parental rights. The father was not present because he was incarcerated at the time of that proceeding. Lloyd Holloway, the DHR case worker assigned to the children, was the only witness to testify at the parental-rights-termination hearing.
Testimony relevant to this appeal revealed the following. Holloway stated that DHR had been unable to offer any services to the father because, he said, in June 2007, shortly after DHR had assumed temporary custody of the children, the father became incarcerated; Holloway testified that the father remained incarcerated at the time of the hearing. The permanency plan for the children was adoption by the current foster parent. Holloway stated that he has not been in contact with the father since his incarceration, but he was aware that the father had been writing the children letters.
Following Holloway's testimony regarding DHR's investigation of viable alternatives to termination of the father's parental rights, DHR rested its case. The guardian ad litem for the children did not object to DHR's petitions to terminate the father's parental rights.
At the close of the evidence, the juvenile court orally granted DHR's petitions to terminate the father's parental rights. On October 20, 2008, the father moved the juvenile court to reopen the proceeding, citing his current incarceration and his belief that he would be "released in the near future" and alleging that he had made "significant progress in rehabilitating himself." DHR opposed the father's motion to reopen the proceeding, asserting that the father, through his own choices, had been incarcerated at the time of the hearing and had presented no evidence indicating that he would be immediately released from incarceration. The juvenile court denied the father's motion.
On November 20, 2008, the juvenile court issued written judgments terminating the parental rights of the father to the children.[3] Those judgments, in pertinent part, state:
"The [children], who previously had been adjudicated by the Court to be dependent, remain[] dependent....
"No parent or other relative has sought to exercise furnish [sic] material support for the child[ren]. During the time the child[ren] ha[ve] been in the care of [DHR] or a person designated by [DHR], the father has been incarcerated.
"....
"[DHR] has considered less drastic alternatives to filing a petition to terminate parental rights. Neither [DHR] nor this Court believes that there are any alternatives less drastic than termination of parental rights available to serve the best interests of the child[ren]. Placement alternatives which were considered *1158 and determined not to be in the child[ren]'s best interests include placement with suitable relatives. Despite a diligent search, [DHR] has been unable to locate a suitable relative to assume custody of the child[ren].
"The [father] of the child[ren] [is] unable or unwilling to discharge [his] responsibilities to the child[ren]. The conduct and condition of the [father] is such that [sic] as to render [him] unable or unlikely to change in the foreseeable future.
"The best interests of the child[ren] require that the parental rights of the [father] be terminated and the child[ren] be placed in the permanent legal custody of [DHR] for the purposes of adoptive planning."
On December 1, 2008, the father filed a "Motion to Reconsider," alleging that the children are being well provided for by the foster parent and that it would be in the best interest of the children to remain in foster care until the father was released from incarceration "in the near future." The juvenile court denied the father's motion, and the father timely appealed.
On appeal, the father alleges that DHR failed to prove by clear and convincing evidence that he was unable or unwilling to care for the children. Our resolution as to that issue is dispositive of this appeal, thus we do not address the father's remaining issue regarding whether DHR exhausted all viable alternatives before terminating his parental rights.[4]
"This court's standard of appellate review of judgments terminating parental rights is well settled. A juvenile court's factual findings, based on ore tenus evidence, in a judgment terminating parental rights are presumed to be correct and will not be disturbed unless they are plainly and palpably wrong." J.C. v. State Dep't of Human Res., 986 So.2d 1172, 1183 (Ala. Civ.App.2007).
Section 26-18-7, Ala.Code 1975, states, in pertinent part:
"(a) If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
"(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
"(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child.
"(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child ....
"(4) Conviction of and imprisonment for a felony.

*1159 "(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
"(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
"(7) That the parent has been convicted by a court of competent jurisdiction of any of the following:
"a. Murder or voluntary manslaughter of another child of that parent.
"b. Aiding, abetting, attempting, conspiring, or soliciting to commit murder or voluntary manslaughter of another child of that parent.
"c. A felony assault or abuse which results in serious bodily injury to the surviving child or another child of that parent....
"(8) That parental rights to a sibling of the child have been involuntarily terminated."
(Emphasis added.)
This court has stated that clear and convincing evidence is "`[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.'" L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002)(citing § 6-11-20(b)(4), Ala.Code 1975).
The father argues that DHR did not present clear and convincing evidence demonstrating that he was unable or unwilling to care for his children because, he states, DHR relied on his incarceration to support that assertion, but failed to enter evidence on the record showing that he is incarcerated as a result of a felony conviction. In response, DHR states that Holloway's testimony revealed that the father had been incarcerated from June 2007 through the date of the termination hearing, approximately 16 months. DHR argues that that testimony is sufficient evidence to demonstrate that the father has been convicted of a felony because a felony conviction requires that a convicted felon serve at least one year and one day in a correctional facility. See § 13A-5-6(a), Ala.Code 1975.
After careful review, we find that there is nothing in the record to confirm that the father has been convicted of and imprisoned for a felony. We are not convinced that the father is incarcerated for a felony conviction simply based on the fact that he has been incarcerated for more than one year and one day.[5] There is no evidence indicating that the father has been convicted of and imprisoned for a felony, nor is there sufficient evidence to show that the father has engaged in any behavior found in § 26-18-7(a)(1)-(8) that would support a finding of his inability or unwillingness to discharge his responsibility as a parent to the children.[6] It is clear from the testimony of the only witness called by DHR that DHR was relying on the father's incarceration to serve as the ground for terminating *1160 his parental rights. We cannot assume that the father has been convicted of a felony based on nothing more than Holloway's testimony that the father has been incarcerated for approximately 16 months.
We conclude that DHR did not clearly and convincingly show that the father was convicted of and imprisoned for a felony to support a finding that he was unable or unwilling to care for the children. We, therefore, reverse the juvenile court's judgment terminating the father's parental rights.[7]
REVERSED.
THOMPSON, P.J., and PITTMAN, J., concur.
THOMAS and MOORE, JJ., concur in the result, without writings.
NOTES
[1] L.L., the mother, also had her parental rights terminated in the same judgments. She is not a party to this appeal.
[2] A report from DHR dated July 22, 2008, states that the children were placed with the father from May 25, 2007, through August 6, 2007, when they were placed with their current foster parent. That fact conflicts with the testimony of Lloyd Holloway, a DHR case worker assigned to the children, indicating that the father was incarcerated in June 2007.
[3] The juvenile court issued separate judgments regarding P.P. and L.P., but the judgments contained identical language.
[4] Although we are not ruling on the issue whether DHR sufficiently overcame its burden regarding viable alternatives, we note that the evidence presented by DHR regarding viable alternatives is sparse.
[5] This argument ignores the possibility that the father is incarcerated and serving time for more than one misdemeanor conviction.
[6] We recognize that other factors not mentioned in § 26-18-7(a)(1)-(8) may be considered in parental-rights-termination cases. See In re Colbert, 474 So.2d 1143, 1146 (Ala.Civ. App.1985). However, the record does not indicate that DHR relied on any factors other than the father's alleged conviction of and incarceration for a felony as a basis for terminating his parental rights.
[7] We note that, by reversing the judgment in this case, we are not holding that the children are no longer dependent or that the father is entitled to custody of the children in the event the father is no longer incarcerated.